S09A0840. WILKERSON v. THE STATE.
(686 SE2d 648)

NAHMIAS, Justice.
John Wilkerson appeals from his conviction for the murder of Leroy Baker.[1] On appeal, Wilkerson contends, among other things,

---

[1] The crimes occurred on October 10, 2005. On December 8, 2005, Wilkerson was indicted for malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a crime. On March 29, 2006, a jury found Wilkerson guilty on all counts. That same day, the trial court sentenced Wilkerson to life in prison for malice murder and to five consecutive years on the firearm offense. The felony murder conviction was vacated as a matter of law, and the trial court merged the aggravated assault conviction into the malice

202

that the evidence is insufficient to support his conviction for murder and that the trial court erred in permitting him to represent himself and in stating that his decision to do so was irrevocable. We affirm.

1. Baker grew up with his cousins, Kimberly and Greg Evans, in Texas. Wilkerson knew Baker and the Evanses in Texas, and he had dated Ms. Evans there. Ms. Evans moved to Georgia in October 2004 to work with her brother Greg. Wilkerson later moved here too, and he and Ms. Evans again began dating. According to Ms. Evans, they had an "on-again-off-again relationship." In October 2005, Baker moved to Georgia to work for Mr. Evans. At that point, Wilkerson was living with Ms. Evans, as were her 13-year-old niece and 17-year-old sister. Baker planned on living temporarily with Ms. Evans.

When Ms. Evans told Wilkerson that Baker would be living with her, Wilkerson asked if Baker was "coming for" him. Ms. Evans was not sure what Wilkerson meant, although Wilkerson and Baker once had an altercation in Texas when Wilkerson bragged to Baker about "being with" Ms. Evans. The day after Baker moved to Georgia, he and Ms. Evans went to visit her brother while Wilkerson stayed at Ms. Evans's apartment. When they returned, Ms. Evans testified, she and Wilkerson decided to break up because their relationship was not working, and Wilkerson was to move out the following morning. Ms. Evans did not explain what precipitated the break up, but a police officer testified that Ms. Evans told him the break up occurred because one of the children told her she had seen Wilkerson with cocaine that day. Later that evening, Ms. Evans offered Baker a piece of cake before she offered one to Wilkerson. Wilkerson became upset because he thought Ms. Evans was catering to Baker more than to him.

About 11:00 p.m., Baker fell asleep on a reclining chair in the apartment's living room, and Wilkerson and Ms. Evans slept in a bedroom. About 6:10 a.m., Ms. Evans saw Wilkerson kneeling beside the bed, under which he kept a shotgun and shells for it. Wilkerson asked for the keys to her car but she refused. A short time later, Ms. Evans heard the rack of a shotgun and then a shot, and immediately thereafter, she heard the same sounds. She ran into the living room and found that Baker had been shot. Wilkerson was gone from the apartment, as was his shotgun. Baker died from his injuries. Ms. Evans called 911, and police came to her apartment. The police found three 12-gauge shotgun shell casings in the living room, and they

murder conviction. On April 3, 2006, Wilkerson filed a motion for new trial, and on May 23, 2007, the trial court denied the motion. Wilkerson filed his notice of appeal on June 20, 2007, and the appeal was docketed in this Court on February 11, 2009. The case was orally argued on June 8, 2009.

matched live shells found under the bed.

Later that morning, police arrested Wilkerson at a nearby gas station. The police took Wilkerson to the police station and placed him in an interview room by himself. A recording device was running, and Wilkerson, talking to himself, stated, among other things, he "was going to jail"; he was "crazy" and a "mental case"; he had made the "stupidest move in his life"; he took "that man's life for nothing"; and his life was over. An officer came into the interview room and asked Wilkerson if he was alright. Wilkerson said, "I just made the biggest mistake of my life. I basically just threw my life away."

Viewed in the light most favorable to the verdict, the evidence was easily sufficient for the jury rationally to have found Wilkerson guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307, 318-319 (99 SC 2781, 61 LE2d 560) (1979).

2. Wilkerson contends that the trial court erred in permitting him to waive his right to counsel and represent himself at trial and further erred in informing him that, once he made the decision to represent himself, he could not change his mind and request representation by counsel.

(a) On the day of trial, Wilkerson informed the trial court that he wished to represent himself at trial because his attorney had advised him to accept a plea offer and had no belief that Wilkerson could win the case. The trial court told Wilkerson it would give him some time to think about whether he wanted to represent himself and warned that there were many dangers in doing so. The trial court also told Wilkerson that his current counsel was very experienced and was "the best that there is." When court reconvened, Wilkerson insisted he wanted to represent himself, and the court, in an extensive colloquy, explained the dangers of self-representation to him. Wilkerson repeatedly stated he understood the dangers involved, and the trial court ultimately permitted him to represent himself, with his appointed counsel assisting as standby counsel.

On appeal, Wilkerson contends he did not make a knowing and intelligent waiver of his right to counsel and that the trial court erred in permitting him to proceed pro se. We disagree because the record reflects that the trial court, through its colloquy, demonstrated that Wilkerson made a knowing and intelligent waiver of his right to counsel. See *State v. Evans*, 285 Ga. 67, 68 (673 SE2d 243) (2009) (trial court must inform the defendant of the dangers inherent in representing himself so that the record establishes the defendant made a knowing and intelligent waiver of his right to counsel); *Faretta v. California*, 422 U. S. 806, 835 (95 SC 2525, 45 LE2d 562) (1975) (same).

(b) Wilkerson also contends that the trial court erred when it stated, at one point midway through the lengthy discussion of his request for self-representation, that if he did elect to represent himself, he could not later "change [his] mind and ask for a lawyer to represent [him]." Wilkerson asserts that this isolated statement violated his right to counsel. At his motion for new trial hearing, Wilkerson testified that, "after the beginning of the trial and actually getting into the witnesses and trying to cross-examine, . . . I kind of realized this wasn't a good idea," and he claimed that he would have requested that standby counsel take over if not for this pronouncement by the trial court.

After a defendant properly waives his Sixth Amendment right to counsel, that right is no longer absolute. See, e.g., *United States v. Leveto*, 540 F3d 200, 207 (3rd Cir. 2008); *United States v. Merchant*, 992 F2d 1091, 1095 (10th Cir. 1993); *Menefield v. Borg*, 881 F2d 696, 700 (9th Cir. 1989); *United States v. West*, 877 F2d 281, 286 (4th Cir. 1989); *United States v. Solina*, 733 F2d 1208, 1211-1212 (7th Cir. 1984). The right to counsel, however, does not evaporate following a valid waiver, and a defendant may make a post-waiver request for counsel if, for example, he discovers he is overwhelmed by the trial process. *Leveto*, 540 F3d at 205, 207-208; *Merchant*, 992 F2d at 1095.

Whether to grant or deny a defendant's post-waiver request for counsel is within the broad discretion of the trial court. *Leveto*, 540 F3d at 207-210; *Merchant*, 992 F2d at 1095; *Menefield*, 881 F2d at 700; *West*, 877 F2d at 286; *Solina*, 733 F2d at 1211-1212. In considering a post-waiver request for counsel, a trial court may consider, among other things, the timing of the request. "[A]s the trial date draws nearer, the [trial] court can and should consider the practical concerns of managing its docket and the impact that a request may have on its general responsibilities for the prudent administration of justice." *Leveto*, 540 F3d at 207. The possibility of a disruption of trial proceedings may be diminished, however, if a "defendant has had standby counsel and requests that the standby counsel represent him." 3 LaFave, Israel, King & Kerr, Criminal Procedure, § 11.5 (c), p. 751 (3rd ed. 2007). If an examination of the record reveals that a trial court has abused its discretion in denying a post-waiver request for counsel during trial, it is a structural Sixth Amendment violation, *Leveto*, 540 F3d at 207-208, and is not subject to a harmless error analysis on direct appeal, *United States v. Proctor*, 166 F3d 396, 406, n. 13 (1st Cir. 1999); *United States v. Gonzalez-Lopez*, 548 U. S. 140, 149 (126 SC 2557, 165 LE2d 409) (2006).

Under this analysis, the trial court appears to have erred in stating flatly that Wilkerson could not, if he waived his right to counsel, make a request for counsel once the trial began. Clearly, the

better practice would have been for the trial court simply to caution Wilkerson that, due to his assertion of the right to represent himself on the day of trial and the potential disruption of trial proceedings, the court would *likely* deny any mid-trial request for counsel. But the court still should have left the door open to exercise its discretion if and when such a request was made. We conclude, however, that Wilkerson's failure to object to the trial court's statement or to make a post-waiver request for counsel bars him from asserting this error on appeal.

First, the subject of the trial court's erroneous statement — whether or not a defendant can later reverse his decision to represent himself — is not part of the required *Faretta* colloquy, which simply requires the court to warn a defendant of the dangers that can arise from self-representation. See, e.g., *Parks v. McClung*, 271 Ga. 795, 798 (524 SE2d 718) (1999) ("a *Faretta* inquiry is addressed to a defendant's understanding of courtroom procedure and his ability to conduct a defense"), overruled on other grounds by *Barnes v. State*, 275 Ga. 499, 502, n. 19 (570 SE2d 277) (2002); *United States v. Jones*, 452 F3d 223, 228-229 (3rd Cir. 2006) (issue of later revoking request for pro se representation not included in long list of model questions for conducting the "penetrating and comprehensive" *Faretta* examination required in the Third Circuit).[2]

Moreover, this Court has repeatedly held that a party may not fail to object to an erroneous ruling or statement of a trial court and then attack that ruling on appeal. *Pinckney v. State*, 285 Ga. 458, 459-460 (678 SE2d 480) (2009) (defendant barred from contending trial court erred by ruling he could not cross-examine co-defendant about plea negotiations because he failed to object); *Rivera v. State*, 282 Ga. 355, 358-359 (647 SE2d 70) (2007) (defendant barred from contending trial court erred in ruling evidence inadmissible where he failed to object); *Plaza Props. v. Prime Business Investments*, 273 Ga. 97, 102 (538 SE2d 51) (2000) (party has duty to object to sua sponte rulings by trial court and failure to do so bars raising the issue on appeal). A party's duty to object in these circumstances gives "the trial court the opportunity to correct the alleged error," and avoids the possibility that a party may intentionally fail to object to a ruling and take a chance of a favorable outcome at trial based on the knowledge he or

---

[2] Indeed, the error at issue here – warning a defendant that his waiver of counsel would have the consequence not just of requiring him to proceed without the benefit of a trained lawyer but to do so irrevocably – would make the defendant *less* likely to elect that even more difficult course. A defendant who in the face of such an erroneous warning turns away from self-representation might be heard to complain that his decision was rendered less voluntary, but one like Wilkerson who nevertheless decides to choose self-representation evinces greater voluntariness in that decision, not less. We express no opinion in this case as to the effect of a trial court's unobjected-to error regarding the warnings that are required by *Faretta*.

she stands a chance of obtaining a reversal on appeal. Id. Accord *Rogers v. State*, 282 Ga. 659, 662 (653 SE2d 31) (2007).

Similarly, the United States Supreme Court has held that, under Rule 11 of the Federal Rules of Criminal Procedure, which like *Faretta* imposes the affirmative duty on a trial court to explain to a defendant, among other things, the rights he will be waiving by pleading guilty, either defendant's counsel or the defendant himself, if he has elected to proceed pro se, must object to the trial court's failure to provide the appropriate warnings. *United States v. Vonn*, 535 U. S. 55, 73-74 (122 SC 1043, 152 LE2d 90) (2002) (involving district court's failure to warn defendant of his right to the assistance of counsel).

In this case, Wilkerson was still represented by his appointed counsel during the *Faretta* hearing, and through counsel he had a duty to object to the trial court's erroneous statement regarding his ability to request the re-appointment of counsel after he began representing himself. Neither counsel nor Wilkerson objected at the time the statement was made, nor did Wilkerson ever give the trial court an opportunity to correct the statement during trial either by objecting to it or by asking for counsel to take over.

Indeed, the record belies Wilkerson's post-conviction assertion he — or his counsel — took the trial court's admonition to heart. Thus, although the court also informed Wilkerson (correctly) that he had no right to hybrid representation during the trial, see *Brooks v. State*, 187 Ga. App. 92, 93 (369 SE2d 349) (1988), Wilkerson nevertheless ignored *that* directive and asked for hybrid representation when, after the State had closed its case, he requested that his standby counsel be permitted to conduct his direct examination. (Notably, Wilkerson did not request that standby counsel take over his representation for the remainder of the trial, which would have precluded him from making his own closing argument.) The trial court declined the request. This effort by Wilkerson to challenge one directive of the court near the end of trial undermines his testimony at the motion for new trial hearing that the court's directive regarding a post-waiver request for counsel inhibited him from making such a request earlier in the trial.

Moreover, at the hearing on his motion for new trial, Wilkerson testified that, after he realized that he wanted standby counsel to take over his representation, he discussed the issue with counsel. But Wilkerson does not claim that he raised the trial court's admonition with standby counsel or that counsel ever reminded him that the court had prohibited such a request. Instead, according to Wilkerson, standby counsel told him he was doing a good job and that the jury would be more compassionate to him "for me doing it the way I spoke it." This indicates again that neither Wilkerson nor standby

counsel understood the trial court's isolated statement as an absolute prohibition that deterred Wilkerson from requesting reinstatement of counsel, had he ever actually decided to make such a request before the jury found him guilty.

Under these circumstances, we conclude that Wilkerson is barred from raising this issue and it is not a basis for reversing his conviction.

3. A police officer testified at Wilkerson's trial that Ms. Evans told him she and Wilkerson decided to break up after one of the girls living in her apartment had seen Wilkerson with cocaine. Wilkerson contends that the officer's testimony violated his right of confrontation under *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LEd2d 177) (2004). Wilkerson, however, failed to raise this objection at trial, and is thus barred from doing so on appeal. *Pinckney*, 285 Ga. at 459-460. The contention is also without merit because Ms. Evans testified at trial and was available for cross-examination. See *McKnight v. State*, 283 Ga. 56, 58 (656 SE2d 830) (2008) (*Crawford* relates to testimonial hearsay of a witness who is unavailable for cross-examination and does not apply when the witness testifies at trial and is subject to cross-examination).

4. Wilkerson contends the trial court erred in permitting two detectives to give improper opinion testimony. Wilkerson, however, did not raise these objections to the testimony of either detective at trial. He is therefore barred from raising the objections on appeal. *Pinckney*, 285 Ga. at 459-460.

5. Wilkerson contends that the trial court erred in charging that "[f]acts and circumstances that merely place upon the defendant a grave suspicion of the crime charged or that merely raise a speculation or conjecture of the defendant's guilt are not sufficient to authorize a conviction of the defendant." Because Wilkerson requested the charge in question, he "cannot complain of the instruction on appeal." *Quintana v. State*, 276 Ga. 731, 735 (583 SE2d 869) (2003). In any event, this Court has rejected the argument that this charge weakens the reasonable doubt standard. *Buttram v. State*, 280 Ga. 595, 599 (631 SE2d 642) (2006); *Quintana*, 276 Ga. at 735.

6. Wilkerson contends that the trial court erred by ruling against his claim that his appointed counsel rendered ineffective assistance up to the time Wilkerson decided to represent himself. We disagree.

To prevail on his ineffectiveness claim, Wilkerson has the burden to establish that trial counsel provided deficient performance and that the deficient performance prejudiced his defense. *Thomas v. State*, 284 Ga. 647, 649 (670 SE2d 421) (2008); *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984). Wilkerson claims that appointed counsel did not adequately consult with him, did not provide him with timely copies of discovery, and

was not prepared for trial. Appointed counsel testified at the motion for new trial hearing, however, that he was appointed to represent Wilkerson in October 2005; that he immediately had an assistant, an attorney, interview Wilkerson; that he filed a motion for a probable cause and bond hearing in magistrate court; that he conducted the probable cause hearing; that he filed a motion to suppress and other pre-trial motions; and that he saw Wilkerson several times in the jail. Appointed counsel also filed for reciprocal discovery and received and reviewed all the discovery that was due to Wilkerson. He testified that he and Wilkerson had one lengthy visit in which he played the videotape of Wilkerson's statement and that he spoke with Wilkerson "many, many" times at court calendars that occurred before his trial. He also interviewed numerous witnesses, including several police officers involved in the case, and he "spent a great deal of time" discussing the case with the prosecutor assigned to the case. Finally, appointed counsel testified that he took the entire discovery package to the jail to fully discuss discovery with Wilkerson, but that Wilkerson would not discuss the case with him. He testified that "[Wilkerson] just did not really want to hear anything I had to say about the case." Appointed counsel offered to give Wilkerson a copy of all the discovery material at that meeting, but Wilkerson got up and left the room. Appointed counsel also asked Wilkerson if he had any defense he wanted to offer and if he had any potential witnesses he wanted counsel to speak with, but Wilkerson was unresponsive and did not provide counsel any useful information.

Based on this evidence, which the trial court implicitly credited in denying the motion for new trial, see *Adams v. State*, 283 Ga. 298, 302 (658 SE2d 627) (2008) (evidence supported trial court's implicit finding that trial counsel's strategy was reasonable), we cannot conclude the trial court erred in ruling against Wilkerson's claim that his appointed counsel provided deficient performance by failing to adequately investigate the case and communicate with him.

*Judgment affirmed. All the Justices concur, except Hunstein, C. J., and Benham, J., who dissent.*

HUNSTEIN, Chief Justice, dissenting.

I respectfully dissent. The record here establishes that Wilkerson waived his right to counsel and was precluded from withdrawing that waiver during trial because of misinformation provided by the trial court to the effect that, by waiving counsel, Wilkerson could never change his mind and obtain assistance of counsel. As the majority properly recognizes, the trial court "erred in stating flatly that Wilkerson could not, if he waived his right to counsel, make a request for counsel once the trial began." Majority Opinion, p. 204. There is thus no question that "the trial court's erroneous statement

— whether or not a defendant can later reverse his decision to represent himself — is not part of the required *Faretta* colloquy," id., given the misleading and incorrect information conveyed in that statement. As a result of the trial court's misinformation, Wilkerson did not knowingly and voluntarily waive his right to counsel.

Although the majority acknowledges the trial court's error, it then mistakenly concludes that Wilkerson is barred from asserting this error on appeal because of his "failure to object to the trial court's statement or to make a post-waiver request for counsel." Id. Turning first to Wilkerson's "failure to object," to the extent the majority's holding is predicated upon Wilkerson's own silence when the trial court made this misstatement,[3] the transcript is clear that, at the time of the misstatement, Wilkerson was still technically represented by counsel because the trial court had not yet authorized him to proceed pro se. Thus, Wilkerson had no right to independently conduct his own defense. See *Ware v. State*, 267 Ga. 510 (2) (480 SE2d 599) (1997) (defendant who is represented by counsel does not have the right to independently conduct his own defense).

That leaves the majority's reliance on the failure *by defense counsel* to object to the trial court's misstatement. Although *Faretta* has been the law now for over thirty years, the majority cannot cite to one single case in which a *Faretta* error was deemed waived due to defense counsel's failure to object. None of the cases on which the majority relies involved *Faretta* hearings. The only discussion of the issue my research has uncovered was a comment by the Court of Appeals for the Ninth Circuit, that

> [a]lthough it is the ultimate responsibility of the district court to ensure that the defendant is advised of dangers and disadvantages of proceeding pro se, the United States Attorney has an obligation to call the court's attention to any omissions in this regard. Similarly, where defense counsel is present at a hearing on a motion to proceed without counsel of record, it is *not inappropriate* for counsel to make suggestions relating to *Faretta* requirements.

(Emphasis supplied.) *United States v. Hayes*, 231 F3d 1132, 1139 (9th Cir. 2000).

The Ninth Circuit's "not inappropriate for counsel to make suggestions" standard is a far cry from the majority's holding that defense counsel "had a duty to object to the trial court's erroneous statement" during Wilkerson's *Faretta* hearing. Majority Opinion, p.

---

[3] See, e.g., Majority Opinion, p. 206, "[n]either counsel *nor Wilkerson* objected at the time the statement was made." (Emphasis supplied.)

210

206. The difference, however, is readily explained by the fact that the majority's requirement effectively eviscerates *Faretta*. Under the majority's rationale, *any* error in the colloquy required by *Faretta* would be procedurally barred whenever defense counsel fails to object on behalf of the defendant prior to the trial court's determination that the defendant could proceed pro se. Thus, even in a situation where the trial court utterly fails to apprise the defendant of the "dangers and disadvantages" inherent in representing himself "so that the record will establish that 'he knows what he is doing and his choice is made with eyes open,' [cit.]" *Faretta*, supra, 422 U. S. at 835 (V), the majority would hold that such an error could not be reviewed absent an objection by defense counsel. I disagree with the majority on this issue and would instead recognize that the lack of an objection by defense counsel does not procedurally bar review of those errors committed by the trial court during a *Faretta* hearing that result in a defendant losing the assistance of counsel in a manner that was not knowing and intelligent.

It is the State's burden to prove that a defendant received sufficient and correct information and guidance from the trial court upon which to knowingly and intelligently relinquish his constitutional right to the assistance of counsel. See *Carnley v. Cochran*, 369 U. S. 506 (82 SC 884, 8 LE2d 70) (1962); *Johnson v. Zerbst*, 304 U. S. 458 (58 SC 1019, 82 LE 1461) (1938); *Jones v. Wharton*, 253 Ga. 82 (316 SE2d 749) (1984). Although, in its footnote 2, the majority intimates that the incorrect information provided by the trial court here was harmless because it could have served only to dissuade Wilkerson initially from proceeding pro se (which it clearly did not), the majority fails to recognize that the harm caused by the misinformation was not merely the effect it had on Wilkerson at the beginning of trial but also its subsequent impact during trial at which time, after realizing he was woefully incapable of representing himself, he erroneously believed he was irrevocably bound by his decision to waive counsel. Hence, I disagree with the majority that Wilkerson is barred from asserting the trial court's error on appeal because of his "failure . . . to make a post-waiver request for counsel." Majority Opinion, p. 205. The majority insists that Wilkerson, by "ignoring" the trial court's information about hybrid representation when he later asked that counsel be allowed to help him at trial, is now procedurally barred from challenging the trial court's misinformation about withdrawal of his waiver because Wilkerson could not have been "inhibited" from likewise "ignoring" that misinformation as well. The majority cites no authority to support its holding and, indeed, relies on the fact that standby counsel apparently *compounded* the trial court's error by failing to correct the misinformation given Wilkerson when they discussed

Wilkerson's pro se performance at trial.[4] See Majority Opinion, p. 207. I do not agree that Wilkerson's action in disregarding one directive at trial can be used to justify penalizing him on appeal for not also challenging the misinformation at issue here. Rather, a more reasonable explanation for Wilkerson's behavior at trial is that, having asked and been rebuffed on his request to obtain counsel's *partial* assistance in his defense, the trial court's misinformation led Wilkerson to conclude it would be utterly futile to ask for counsel to assume *total* control of his defense.

For these reasons I must reject the majority's holding that Wilkerson's objection to the trial court's misinformation is procedurally barred. Instead, based on my agreement with the majority that the trial court erred by misinforming Wilkerson about the withdrawal of his waiver of his right to counsel, I would conclude that the trial court's misinformation precluded a valid waiver, thereby mandating reversal of the judgment in this case.

I am authorized to state that Justice Benham joins in this dissent.

DECIDED NOVEMBER 23, 2009.

*Derek H. Jones*, for appellant.
*Patrick H. Head, District Attorney, John R. Edwards, Dana J. Norman, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Amy E. Hawkins Morelli, Assistant Attorney General*, for appellee.

---

[4] Wilkerson, of course, is barred from raising any complaints about the effectiveness of standby counsel on appeal. *Mullins v. Lavoie*, 249 Ga. 411 (290 SE2d 472) (1982).