**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS
COURT. ALL FILINGS MUST BE SUBMITTED WITHIN
THE TIMES SET BY OUR COURT RULES.*

**March 8, 2021**

# In the Court of Appeals of Georgia

A20A1998. WRIGHT v. THE STATE.                    DO-069 C

DOYLE, Presiding Judge.

Following a jury trial, at which he represented himself, Willie Frank Wright, Jr., was found guilty of aggravated assault and family violence battery. Wright filed a pro se motion for new trial, which was later amended by appellate counsel. The trial court denied the amended motion, and Wright, now represented by counsel, appeals.[1]

---

[1] Between the time Wright filed the first notice of appeal, on August 19, 2010, and the trial court's March 5, 2020 disposition of the amended motion for new trial, nearly ten years passed. It is unclear why the delay occurred, although it is at least in part due to Wright's repeated conflicts with his appointed attorneys. Nevertheless, the Georgia Supreme Court has explained that long post-conviction pre-appeal delays "put at risk the rights of defendants and crime victims and the validity of convictions obtained after a full trial." See *Owens v. State*, 303 Ga. 254, 258 (811 SE2d 420) (2018) ("reiterat[ing] that it is the duty of all those involved in the criminal justice system . . . to ensure that the appropriate post-conviction motions are filed, litigated, and decided without unnecessary delay").

Wright argues that the trial court erred (1) by failing to grant his post-waiver request for counsel; and (2) by failing to instruct the jury on the defense of insanity. For the reasons that follow, we reverse.

Viewed in the light most favorable to the verdict,[2] the record shows that late in the evening on December 20, 2009, Wright's wife, K. Y., ended her shift at work, at which time Wright was supposed to have picked her up. Wright, however, had misplaced his keys, and the two argued over the phone when Wright could not come. K. Y. called her niece, who picked her up, and when K. Y. and Wright were both back at home, the two continued to argue about various subjects, including Wright's allegation that K. Y.'s nephew had damaged a car window.

As K. Y. walked out of the house, Wright pushed her off the porch to the ground. K. Y. then went back into the house and called the police from her teenaged daughter's room, and when she exited that room, Wright was back in the house pointing a black handgun at her. Wright then shot K. Y. in the left shoulder. K. Y. testified that she believed that he shot her on purpose because of the way he was holding the weapon and pointing it at her with his finger on the trigger, and because

---

[2] See *Walker v. State*, 315 Ga. App. 821 (728 Ga. App. 334) (2012), citing *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

he did not drop the gun or bump it on anything to indicate it would have accidentally discharged.

K. Y.'s daughter came out of her room, saw K. Y. on the floor, and heard Wright say "this is the last time you [are] going to call the police on me." Wright implored the daughter to take the weapon and shoot him, but she refused and went next door, where she called the police. The daughter told the neighbor that her mother was lying in a "puddle of blood."

Although he could not be found that night, Wright turned himself in at a local news station the following day; thereafter, although he initially denied shooting K. Y., he later told detectives where they could find the handgun.

Prior to trial, Wright, who had filed numerous pro se motions, maintained that he did not wish to be represented by the public defender, and his attorney filed a motion to withdraw, which the trial court granted. On the first day of trial during jury voir dire, however, Wright and the court had a discussion regarding motions, during which Wright stated, "I got a right to an attorney. Still got a right to an attorney." Voir dire continued, and after recess for lunch, Wright filed a motion for a mental evaluation in which he also requested that the public defender be appointed as his

attorney. The transcript of the proceedings does not show that the trial court ruled on this request, and Wright did not make any further request for an attorney.

At the conclusion of trial, the jury found Wright guilty of aggravated assault and family violence battery but acquitted him of cruelty to children. Wright filed a pro se motion for new trial, in which he enumerated as error (among other things) the trial court's failure to appoint counsel at his request. Wright's pro se motion for new trial was followed by several amended motions for new trial filed by first appellate counsel and current appellate counsel.

1. Wright first argues that he was wrongfully denied counsel after he made a post-waiver request for an attorney. We agree.

> Assuming a defendant's waiver of his right to counsel is proper, that right, once waived, is no longer absolute. The right to counsel, however, does not evaporate following a valid waiver, and a defendant may make a post-waiver request for counsel if, for example, he discovers he is overwhelmed by the trial process. Whether to grant or deny a defendant's post-waiver request for counsel is within the broad discretion of the trial court. In considering a post-waiver request for counsel, a trial court may consider, among other things, the timing of the request. As the trial date draws nearer, the trial court can and should consider the practical concerns of managing its docket and the impact that a request may have on its general responsibilities for the prudent administration of justice. The possibility of a disruption of trial

4

proceedings may be diminished, however, if a defendant has had standby counsel and requests that the standby counsel represent him. If an examination of the record reveals that a trial court has abused its discretion in denying a post-waiver request for counsel during trial, it is a structural Sixth Amendment violation, and is not subject to a harmless error analysis on direct appeal.[3]

Wright made a post-waiver request for counsel during voir dire when he stated, "I got a right to an attorney. Still got a right to an attorney."[4] Wright

---

[3] (Citations and punctuation omitted.) *Tyner v. State*, 334 Ga. App. 890, 894 (1) (780 SE2d 494) (2015), quoting *Wilkerson v. State*, 286 Ga. 201, 204 (2) (b) (686 SE2d 648) (2009).

[4] The full conversation between the trial court and Wright is as follows:
-
WRIGHT: Your Honor, I have not been able to have my motion to suppress evidence. I don't have nothing. I'm not prepared.
THE COURT: But your time for motions is long past.
WRIGHT: No, sir. This is suppress —
THE COURT: There are no motions going to be heard now.
WRIGHT: I don't have no evidence. I don't have no affirmative defense.
THE COURT: Well, let me tell you what. That's your problem. You want to represent yourself. Here we are. And we're going to pick a jury and proceed. Have a seat.
WRIGHT: (No response.)
THE COURT: You hear me?
WRIGHT: Well, I'm going to be silent for the rest of the proceedings then. I'm not going to — I'm not going to pick the jury. You pick it.
THE COURT: That's up to you. Have a seat.
WRIGHT: You can't pick the jury. . . .
THE COURT: Watch.

argues that the trial court abused its discretion by failing to consider this a request for

---

WRIGHT: You watch. You can hold me in contempt.

THE COURT: Don't —

WRIGHT: It don't matter to me, sir. I told you I'm not ready. I just told you that. I don't have what I need.

THE COURT: Don't make any more comments to me of that nature.

WRIGHT: I'm going to make more comments.

THE COURT: No, you're not either.

WRIGHT: I'm telling you I'm not ready. There ain't nothing you can do but send me back to the County jail. I know that, and you know that. I told you I'm not ready. I'm not ready.

THE COURT: The trial is going forward.

WRIGHT: I am not ready. It's not going to go forward. I'm not ready. I done told you that. (Unintelligible.)

THE COURT: We're fixing to get down to it.

WRIGHT: I told you I ain't ready. I'll say it in front of the jury. Don't make no difference. Going to be on the record that I told you I'm not ready. You going to be — you supposed to be — you supposed to be impartial. I'm (unintelligible) —

THE DEPUTY: You want to talk to him out of the presence of the potential jurors, your Honor?

THE COURT: Just leave him.

WRIGHT: I asked him to recuse hisself (sic). I got a — I got a affidavit right here right now. Motion to recuse. I got a constitutional right to freedom of speech. You can't make me shut up, man. You shut up. (Unintelligible.) It's my constitutional right. You want to revoke it, revoke it. Go on and put it on the record. Told you I ain't ready.

I got a right to an attorney. Still got a right to an attorney. I'm going to make motions whether you deny them, deny them on over, deny them on the record. . . .

WRIGHT: The Court of Appeals going to see your impartial [sic] decisions. Court of Appeals will see your impartial [sic] decisions, [be]cause I will bring them forth on the record. She got to record everything said in the courtroom here. . . .

6

counsel and to make inquires into whether Wright wanted assistance from the public defender who was present during trial or to have him reappointed to represent Wright.

The State maintains that this exchange was not sufficient to constitute a post-waiver request for counsel. Considering this statement alone, we may have agreed with this conclusion; however, the same day as this oral request, Wright filed a handwritten "notice" with the trial court, which was accepted and bears the trial judge's signature. The document is styled a "Notice of Intent of Defense to Raise Issue of Insanity or Mental Incompetence." In the notice, Wright stated that he was giving notice that he intended to seek an insanity defense, requested "an evaluation," and asked for "Mr. Frankie W. Hicks to be appointed as counsel." The request was filed with the court after a continuance for lunch. At that time, voir dire (during which Wright had made the oral request) and opening statements were completed, and the State's first witness had testified. The State would go on to call 12 more witnesses after the notice was filed. Nevertheless, there is no indication that the trial court ruled on Wright's written or oral request for reappointment of counsel.

Wright contends that this constituted an abuse of discretion and structural error, requiring reversal.[5] We agree. We are mindful of the record, which shows that Wright was antagonistic toward his appointed attorneys prior to trial and during post-trial proceeding, and he filed multiple pro se motions prior to trial. Nevertheless, failure to appoint counsel post-waiver may constitute structural error, which can never be harmless,[6] and a trial court's failure to exercise its discretion is in itself an abuse of discretion.[7] Although Wright did not request a ruling on his written motion for reappointment for counsel,[8] it was the second request for reappointment made by

[5] See *Tyner*, 334 Ga. App. at 894 (1). See also *Wilkerson*, 286 Ga. at 204 (2) (b).

[6] See *Tyner*, 334 Ga. App. at 895-896 (1).

[7] See, e.g., *Gresham v. State*, 281 Ga. App. 116, 117 (635 SE2d 316) (2006) (holding an abuse of discretion occurred when the court failed to exercise discretion as to admission of evidence based on an erroneous finding that a non-applicable statute prohibited said admission).

[8] See *Brooks v. State*, 309 Ga. 630, 638 (3) (847 SE2d 555) (2020) ("It is the duty of counsel to obtain a ruling on his motions or objections," and failure to do so will result in waiver for purposes of appeal."). Cf. *Wilkerson*, 286 Ga. at 206-207 (2) (applying the premise of waiver for failure to object in a case involving waiver of counsel and an erroneous statement of law by the trial court during a hearing pursuant to *Faretta v. California*, 422 U. S. 806, 835 (95 SCt 2525, 45 LE2d 562) (1975)); *Kelly v. State*, 344 Ga. App. 433 (810 SE2d 197) (2018) ("a party may not fail to object to an erroneous ruling or statement of a trial court and then attack that ruling on appeal") (punctuation omitted).

8

Wright at that point. Most of the trial remained to be conducted, and the trial court's failure to consider and rule on the motion was error. Accordingly, the judgment of conviction is reversed.

2. Wright also argues that the trial court erred by refusing his request to give a charge to the jury on his defense of insanity. Our review of the record reveals no testimony or evidence supporting an inference that Wright lacked the capacity to distinguish right from wrong or was laboring under a mental disease, injury, or deficiency such that he could not resist committing a crime.[9] Nevertheless, based on our conclusion in Division 1, we need not address this argument. Upon retrial, the decision to instruct the jury on this issue would depend upon the evidence presented at that time.

*Judgment reversed. McFadden, C. J., and Hodges, J., concur.*

---

[9] See OCGA §§ 16-3-2, 16-3-3.