**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**April 10, 2026**

# In the Court of Appeals of Georgia

A26A0323. FREEMAN v. THE STATE.

DILLARD, Presiding Judge.

William Freeman appeals his convictions for four counts of child molestation. More precisely, he argues the trial court erred in finding that he knowingly and voluntarily waived his right to counsel because it (1) did not inquire into such a waiver after he was reindicted with a new charging document, and (2) failed to ensure he understood the risks of self-representation. For the follow reasons, we affirm.

Viewing the evidence in the light most favorable to the trial court's verdict,[1] the record shows that, in 2020, Freeman moved in with his cousin, Cicely Brown, her husband, and their two minor daughters—D. B. and A. B. One night in October 2020, when A. B. was 12 years old, she and Freeman were watching television on the sofa and

---

[1] See, e.g., *Jones v. State*, 307 Ga. 505, 506(1) (837 SE2d 288) (2019).

A. B. felt Freeman "bringing his hand to … [her] underwear lining." Freeman then touched A. B.'s breast, thigh, and waist, which greatly distressed her—but she did not respond because she was unsure of what to do.

Eventually, the relationship between Freeman and Brown's husband became "contentious," and Brown told Freeman to move out. So, Freeman then moved in with Derek Mann (another cousin), whose house was across the river from Brown's home. D. B. and A. B. visited Mann's home "from time to time" because, according to Brown, he was close by and it was "almost as if [they] had two combined households … ." Mann also had a pool, and the girls had sleepovers there. On one of those visits, A. B. and Freeman went outside to sit on the porch, and she felt Freeman "creep up" behind her while she was lying on her side. Then, A. B. felt a "penis bulge," which startled and alarmed her. Freeman placed his hand down her pants and touched her vagina and buttocks. In response, A. B. brandished a pocket knife that Mann had given her, which caused Freeman to go back inside the house.

Later on, Freeman was charged, via indictment, with two counts of child molestation.[2] And while the trial court first appointed counsel to represent Freeman, he

_____

[2] While this initial indictment is not included in the appellate record, it is undisputed the State first indicted Freemen for two counts of child molestation; but as discussed below, he was ultimately tried for charges brought in an amended indictment.

later decided to represent himself. As a result, the trial court held a *Faretta*[3] hearing on the matter. After asking Freeman numerous questions about his decision to proceed *pro se* and cautioning him about the risks of doing so, the trial court granted his request. The State then amended the indictment to charge Freeman with two more counts of child molestation (*i.e.*, four counts total).[4] Ultimately, Freeman proceeded with a bench trial—during which he represented himself—and was convicted of all charges. The trial court then appointed post-conviction counsel to represent Freeman, and he filed a motion for a new trial. In doing so, Freeman argued, among other things, that the trial court erred in finding he made a knowing and voluntary waiver of his right to trial counsel. But after a hearing, the trial court denied the motion. This appeal follows

1. Freeman first argues the trial court erred by failing to ensure that he knowingly and voluntarily waived his right to counsel as to the amended indictment. We disagree.

---

[3] See *Faretta v. California*, 422 U.S. 806, 835–36(V) (95 SCt 2525, 45 LE2d 562) (1975) (holding that if a defendant makes a pre-trial, unequivocal assertion of the right to self-representation, the request must be followed by a hearing to ensure the defendant knowingly and intelligently waives the "traditional benefits associated with the right to counsel" and understands the "disadvantages of self-representation so that the record will establish that he knows what he is doing and his choice is made with eyes open" (quotation marks omitted)).

[4] The *Faretta* hearing was held on March 23, 2022, and the indictment was amended on July 7, 2022.

Both the federal and Georgia constitutions "guarantee a criminal defendant the right to self-representation."[5] But to avail oneself of this fundamental right, a defendant is required to "clearly and unequivocally assert his desire to represent himself."[6] So, if a defendant "makes an *unequivocal* assertion of his right to represent himself prior to trial, the request should be followed by a *Faretta* hearing to ensure that the defendant knowingly and intelligently waives the right to counsel and understands the disadvantages of self-representation."[7] Simply put, if the trial court "improperly denies

---

[5] *Woodard v. State*, 352 Ga. App. 322, 327(2) (835 SE2d 35) (2019). See U.S. Const. Amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defence."); Ga. Const., Art. I, Sec. I, Par. XII ("No person shall be deprived of the right to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state."); *Wiggins v. State*, 298 Ga. 366, 368(2) (782 SE2d 31) (2016) ("[B]oth the federal and state constitutions guarantee a criminal defendant both the right to counsel and the right to self-representation."); *Taylor v. Ricketts*, 239 Ga. 501, 502 (238 SE2d 52) (1977) ("A state may not force a lawyer upon an appellant when he insists that he wants to conduct his own defense.").

[6] *Woodard*, 352 Ga. App. at 327–28(2). Accord *Oliver v. State*, 305 Ga. 678, 680(2) (827 SE2d 639) (2019); *Wiggins*, 298 Ga. at 368(2).

[7] *Woodard*, 352 Ga. App. at 328(2) (punctuation omitted). Accord *Owens v. State*, 298 Ga. 813, 814(2) (783 SE2d 611) (2016); *Smith v. State*, 332 Ga. App. 849, 853(2) (775 SE2d 211) (2015).

a defendant his right to self-representation, this denial is a structural error that is not subject to a harmlessness analysis, and requires automatic reversal."[8] But if the assertion of the right to proceed without the benefit of counsel is equivocal, there is "no reversible error in requiring the defendant to proceed with counsel."[9]

Moreover, our Supreme Court has held that "[a]fter a defendant properly waives his Sixth Amendment right to counsel, that right is no longer absolute."[10] That said, the right to counsel "does not evaporate entirely after a valid waiver, and a defendant may make a post-waiver request for counsel."[11] Of course, whether to grant or deny a defendant's post-waiver request for counsel is "within the broad discretion of the trial court."[12] Even so, if an examination of the record "reveals that a trial court has abused its discretion in denying a post-waiver request for counsel during trial, it is a structural

---

[8] *Woodard*, 352 Ga. App. at 328(2) (punctuation omitted). Accord *Oliver*, 305 Ga. at 680(2).

[9] *Woodard*, 352 Ga. App. at 328(2) (punctuation omitted). Accord *Wiggins*, 298 Ga. at 368(2).

[10] *Wilkerson v. State*, 286 Ga. 201, 204(2)(b) (686 SE2d 648) (2009). Accord *Kelly v. State*, 344 Ga. App. 433, 435 (810 SE2d 197) (2018).

[11] *Kelly*, 344 Ga. App. at 435 (quotation marks omitted). Accord *Wilkerson*, 286 Ga. at 204(2)(b).

[12] *Wilkerson*, 286 Ga. at 204(2)(b). Accord *Davis v. State*, 304 Ga. App. 355, 362(3) (696 SE2d 381 ) (2010).

Sixth Amendment violation and is not subject to a harmless error analysis on direct appeal."[13]

Turning to this case, at the outset of the *Faretta* hearing, Freeman expressed dissatisfaction with his court-appointed attorney and informed the trial court that he would "continue representation, pro se for the defense." Given his complaints about appointed counsel, the court asked Freeman if he intended to seek private counsel or represent himself; and he responded that he would "go pro se." Freeman also told the court that if private counsel were needed later, he would assert his right to counsel at that point; but for now, he wanted to represent himself. The court cautioned Freeman that he was facing "very serious charges" and advised that his appointed counsel was experienced in handling child-molestation cases. And the court also confirmed the "issue" was Freeman's desire to represent himself, not just that he disliked appointed counsel. Ultimately, Freeman stated it was "necessary" for him to proceed *pro se*.

When asked by the trial court whether he believed he could present his case better than an attorney, Freeman said "in presenting the facts, yes." The court then confirmed Freeman understood jury selection would be "very difficult" for a non-lawyer. At this point, Freeman told the court he was also waiving his right to a jury trial and preferred

---

[13] *Wilkerson*, 286 Ga. at 204(2)(b) (quotation marks omitted).

a bench trial instead. Next, Freeman confirmed his understanding that he would be subject to the same rules as the prosecutor, even though he was not an attorney. Freeman acknowledged that, if he represented himself, he would assume "full responsibility" for his defense.

Freeman also confirmed his understanding that, if he were convicted, he would not be able to claim on appeal that it was caused by his own incompetency. And Freeman acknowledged that being incarcerated before trial would "severely" limit his ability to do research and investigate the case, while an attorney would not be subject to those limitations. The court informed Freeman that a lawyer would be in a far better position to argue for leniency during a possible sentencing proceeding. Freeman agreed that he understood the charges against him and the potential penalties he faced if convicted—*i.e.*, 40 years' incarceration and registration as a sex offender. The court then advised Freeman of the various consequences of being a registered sex offender. Finally, Freeman stated that he had not been threatened or promised anything to waive his right to counsel.

Ultimately, at the conclusion of the hearing, the trial court granted Freeman's request to represent himself. In doing so, the court stated the following:

> I'll note for the record that the [c]ourt has advised Mr. Freeman of the charges against him, the consequences that he faces if found guilty[,] ... the

advantages of being represented by a lawyer[,] and the disadvantages of self representation. I've inquired into his background, training, education[,] and mental state, and I find that ... he has made a knowing[ ], intelligent[,] and voluntary waiver of the right to counsel.

As mentioned above, Freeman now argues the trial court erred by failing to ensure he knowingly and voluntarily waived his right to counsel as to *the amended indictment*—the charging document for which he was tried. Indeed, the amended indictment—which added two more child-molestation charges—was filed *after* the *Faretta* hearing. In doing so, Freeman claims this case is analogous to *Rivera v. State*,[14] in which this Court held that "[b]ecause we cannot conclude that [the defendant's] conviction was independent of his decision to represent himself, we reverse the judgment of the trial court and remand for a new trial."[15] But in *Rivera*, the trial court made only "general statements" that the defendant should reconsider his decision to represent himself and did *not* "ensure that [the defendant] was aware that he was facing seven felony counts of sexual exploitation of a minor and the range of consequences if he was convicted of those charges."[16] In contrast, the trial court here questioned Freeman *at*

[14] 371 Ga. App. 833 (903 SE2d 298) (2024).

[15] Id. at 837(3) (quotation marks omitted).

[16] Id. at 836(2).

*length* about his decision to represent himself, advised him of the serious nature of the charges against him, informed him of the consequences he faced if convicted, and explained the benefits of being represented by counsel, as well as the specific disadvantages of representing himself. Importantly, Freeman repeatedly confirmed he understood the foregoing and nonetheless maintained his desire to represent himself throughout the hearing. This case, then, is inapt to the facts and circumstances presented in *Rivera*, and the trial court here did not abuse its discretion in finding Freeman's waiver of counsel to be knowing and voluntary.[17]

---

[17] See *State v. Evans*, 285 Ga. 67, 69 (673 SE2d 243) (2009) (explaining that "a defendant's waiver of his right to counsel is valid if the record reflects that the defendant was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver"); *Wright v. State*, 356 Ga. App. 597, 605(2) (848 SE2d 467) (2020) (holding that defendant's waiver of counsel was knowing and voluntary when, as here, "the trial court conducted a thorough *Faretta* hearing and permitted the [defendant] to seek clarification and respond to the trial court's questions[,] [and] [t]he trial court discussed the nature of the charges against the [defendant], including the statutory charges within the offenses as well as the range of possible punishments, and the dangers of self-representation" (footnote omitted)); *Cox v. State*, 317 Ga. App. 654, 655 (732 SE2d 321) (2012) ("The trial court is not required to address each of these points with the defendant; rather, the record need only reflect that the accused was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver. The trial court must apprise the defendant of the dangers and disadvantages inherent in representing himself so that the record will establish that he knows what he is doing and his choice is made with eyes open." (quotation marks, brackets, and footnote omitted).

Even so, Freeman complains the *Faretta* hearing was held before the indictment was amended and contends the trial court abused its discretion when it did not inquire about his waiver of the right to counsel a second time. But the State amended Freeman's indictment to add only two more child-molestation charges, and he had already been advised of the nature and seriousness of such charges. And significantly, all four charges involved the same victim with nearly identical allegations, occurring within only a two-month time period.[18] He was also advised at the *Faretta* hearing that, if he were convicted, he could receive a 40-year sentence of incarceration; and despite the State adding two more child-molestation charges, Freeman was ultimately sentenced to 40 years, with 39 years to serve.[19]

Freeman also contends the trial court's failure to advise him of the nature of the charges against him in the amended indictment—on which he was ultimately

---

[18] In Count One, Freeman was charged with committing an immoral and indecent act to A. B., a minor, with the intent to arouse and satisfy his sexual desires by touching her breasts. The other charges involved identical language, except for the particular acts of molestation alleged. Count Two alleged Freeman touched A. B.'s thigh; Count Three alleged he touched her vagina; and Count Four alleged he touched her buttocks. All of these offenses allegedly occurred during roughly the same time period—sometime between October 1, 2020, and November 31, 2020.

[19] Although Freeman was convicted of four counts of child molestation, for sentencing purposes, Count Two merged with Count One and Count Four merged with Count Three.

charged—was not harmless. In support, he notes that, at trial, he did not mount a defense at all, refusing to sit or speak during the entire trial. But the test is not whether the accused is "capable of good lawyering—but whether he knowingly and intelligently waives his right to counsel."[20] Here, the trial court conducted a thorough *Faretta* hearing during which Freeman knowingly and voluntarily waived his right to counsel, and thus, his failure to mount a defense was without consequence.[21]

Significantly, although the decision of whether to grant or deny a defendant's post-waiver request for counsel is "within the broad discretion of the trial court[,]"[22]

---

[20] *Evans*, 285 Ga. at 69 (quotation marks omitted). Accord *Wright*, 356 Ga. App. at 600(2).

[21] When a trial court *fails to fully inform* a defendant of his *Faretta* rights and makes a finding that his waiver of counsel is knowing and voluntary, such failure is not harmless when the defendant "did not mount an able defense." *McDaniel v. State*, 327 Ga. App. 673, 680(1)(c) (761 SE2d 82) (2014). But here, the trial court *did* fully inform Freeman of his rights, advise him of the dangers of proceeding *pro se*, and make specific findings as to the voluntary nature of Freeman's waiver of his right to counsel. Because the record established that Freeman's waiver of counsel was fully informed and valid, his potential incompetence at trial was harmless. Cf. *Stewart v. State*, 361 Ga. App. 636, 644(2)(b) (865 SE2d 237) (2021) ("Even when the evidence against a defendant is substantial, *error* in finding a knowing waiver of the right to counsel may not be harmless where the record shows that the defendant did not mount an able defense." (emphasis added)); *Middletown v. State*, 254 Ga. App. 648, 650(2) (563 SE2d 543) (2002) ("[S]trong evidence of guilt does not mean that the trial court's *failure to establish a valid waiver* of counsel was harmless error." (emphasis added)).

[22] *Wilkerson*, 286 Ga. at 204(2)(b).

Freeman never made such a request. As a result, we have no trial court ruling to review for an abuse of discretion. We are a court of review, "not of first view."[23] Indeed, our appellate courts are "courts for the correction of errors of law committed in the trial court[,] [and] [r]outinely, this Court refuses to review issues not raised in the trial court."[24] So too here.

There was no meaningful difference, then, between the charges in the initial and amended indictments, the two additional charges did not affect the maximum sentence Freeman faced, and after the amended indictment was issued, he never made a post-waiver request for counsel. Under these circumstances, we cannot say the trial court abused its discretion in allowing Freeman to represent himself at trial without making a second, identical inquiry into his decision to proceed *pro se*, especially when he never asked the court to do so.[25]

---

[23] *State v. Jennings*, 362 Ga. App. 790, 796(1)(c) (869 SE2d 183) (2022) (punctuation omitted). Accord *Flanders v. State*, 360 Ga. App. 855, 855 (862 SE2d 152) (2021).

[24] *Pfeiffer v. Ga. Dep't of Transp.*, 275 Ga. 827, 829(2) (573 SE2d 389) (2002) (footnote omitted). See *Santana v. Ga. Power Co.*, 269 Ga. 127, 129(6) (498 SE2d 521) (1998) (holding that because a certain argument was not raised and ruled upon by the trial court, the Supreme Court of Georgia would not address it on appeal).

[25] See supra note 17 accompanying text.

2. Next, Freeman claims the trial court abused its discretion in failing to ensure that he knowingly and voluntarily waived his right to counsel because the record does not establish that he understood the risks attendant with self-representation and chose to do so despite those risks. This argument is a nonstarter.

As detailed above, at the *Faretta* hearing, the trial court advised Freeman *at length* of the risks attendant with self-representation. Specifically, the court informed Freeman that (1) he would be hindered in preparing his defense while incarcerated; (2) despite his lack of legal expertise, he would be subject to the same rules as attorneys; (3) he would be assuming the full responsibility for his defense; (4) he was facing serious charges and his then-current attorney was experienced in child-molestation cases; (5) if he opted for a jury trial, jury selection could be extremely challenging for a non-lawyer; and (6) a lawyer would be in a better position to argue for leniency at sentencing.

Still, Freeman maintains he gave the trial court "equivocal" answers during the *Faretta* hearing; but a review of the transcript shows he was adamant throughout the hearing that he wanted to represent himself. And while Freeman appears to place significant amount of weight on a statement he made at the outset of the hearing that he was there "by special appearance and not direct appearance," he does not explain what

this means—and we are not in the guesswork business. Freeman *repeatedly* and without any equivocation told the court he wanted to proceed *pro se*. This, he was allowed to do.

Freeman also adds that he expressed grievances with his attorney, but the trial court confirmed that he wanted to proceed *pro se* because it was something he wanted to do and not simply because he was unhappy with his lawyer. Freeman even asserted that he felt it was "necessary" to represent himself. So, while Freeman may have had disagreements with his appointed counsel, he assured the court those issues were not the reason he wanted to represent himself. In fact, Freeman even stated that if he changed his mind about proceeding *pro se*, he would ask to retain private counsel; and the court gave no indication it would deny such a request.

So, under these circumstances, Freeman has not shown the trial court abused its discretion in finding that he knowingly and voluntarily waived his right to be represented by counsel, even though it did not *sua sponte* hold a second, nearly identical *Faretta* hearing after the amended indictment was issued.

For these reasons, we affirm Freeman's convictions.

*Judgment affirmed. Gobeil and Pipkin, JJ., concur.*

14