**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and BLACKWELL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**May 10, 2012**

# In the Court of Appeals of Georgia

A12A0046. WALKER v. THE STATE.

MILLER, Judge.

Following a jury trial, Christopher Wesley Walker ("Walker") was convicted of family violence battery (OCGA § 16-5-23.1 (f) (1)) and family violence simple battery (OCGA § 16-5-23 (f)). Walker filed a motion for new trial, which the trial court denied. Walker appeals, contending that the evidence was insufficient to sustain his conviction for family violence battery under OCGA § 16-5-23.1 (f) (1). We disagree and affirm.

On appeal from a criminal conviction, we view the evidence in a light most favorable to the prosecution to determine whether the evidence was sufficient to prove guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the evidence shows that Walker and the victim, Kari Walker, were married for approximately seventeen years until they were divorced in May 2010. Walker and Kari had four children together. In the final eight years of their marriage, Walker was physically violent with Kari on several occasions. The relevant incidents occurred in July 2009, while the Walker family was staying at Kari's parents' home in Blairsville, Georgia. At approximately 4 a.m. on July 27, 2009, when Walker and Kari were both in bed, Walker began yelling at Kari because she had ignored him while they were watching television that evening and had failed to wake him up in time to attend church that morning. After a few minutes, Walker got onto his knees and began choking Kari with both hands around her neck. After Kari cried and apologized to Walker, he stopped choking her, rolled over, and went to sleep. Kari laid in bed for about 30 minutes later; when she heard her father making coffee in the kitchen, she got up to go speak with him about the choking incident. Kari's father saw the red marks on her neck. Kari convinced her father not to call the police and confessed to him that Walker had been physically abusing her for the past eight years, but that she was just not prepared to leave him yet.

The next evening at Kari's parents' home, when Walker and Kari were once again in bed, Walker warned Kari not to ignore him again and that she needed to start

talking; Kari proceeded to ask Walker to forgive her for being rude for the past few days. Walker left the room at approximately 2:30 a.m. to eat and smoke a cigarette. Shortly after Walker returned to bed at about 4 a.m., he got up onto his elbows and punched Kari's left ear. The blow caused Kari to fall out of bed. Kari sat on the floor for a few minutes trying to maintain her composure and then got up to take her young daughter to the restroom. When Kari returned from the restroom, Walker was asleep. At about 5:00 a.m., Kari heard her father in the kitchen making coffee. She went to talk to him about the incident and showed him her left ear, which was ringing so badly that she had trouble hearing what her father was saying. Kari's father described that her ear and the side of her head were very red and swollen and noticed that a piece of her left earring had been knocked off. Again however, Kari again begged her father not to call the police, explaining to him that it would make things worse and she needed to first come up with a plan on how to leave Walker.

Finally, later that day, Kari made the decision to leave Walker, and she took herself and her children to a safe house while Walker was sleeping. Once he confirmed Kari and the children's arrival at the safe house, Kari's father called the police for assistance in removing Walker from his home. The responding officers first visited the safe house to speak with Kari. One of the officers testified that he

3

observed red marks and discoloration on Kari's ear and on the side of her head; based on his training and experience, he described the marks as consistent with blunt force trauma. In light of their observations and Kari's statements, the responding officers drove to Kari's parents' home and arrested Walker. Walker was charged and subsequently convicted of family violence battery under OCGA § 16-5-23.1 (f) (1) for the punching incident and family violence simple battery under OCGA § 16-5-23 (f) for the choking incident.

On appeal, Walker challenges the sufficiency of the evidence only with respect to his family violence battery conviction under OCGA § 16-5-23.1 (f) (1) for punching Kari in the ear. OCGA § 16-5-23.1 pertinently provides as follows:

> (a) A person commits the offense of battery when he or she intentionally causes substantial physical harm or visible bodily harm to another.
>
> (b) As used in this Code section, the term "visible bodily harm" means bodily harm capable of being perceived by a person other than the victim and may include, but is not limited to, substantially blackened eyes, substantially swollen lips or other facial or body parts, or substantial bruises to body parts.
>
> . . .

(f) If the offense of battery is committed between past or present spouses . . . then such offense shall constitute the offense of family violence battery and shall be punished as follows:

(1) Upon a first conviction of family violence battery, the defendant shall be guilty of and punished for a misdemeanor[.]

OCGA § 16-5-23.1 (a), (b), (f) (1).

Here, the accusation alleged that Walker committed battery by causing "visible bodily harm, to wit: redness and discoloration, . . . by striking [Kari] on the side of the head with a closed fist[.]" Indeed, Kari testified that Walker punched her left ear, causing her to fall off the bed. Kari's father testified that Kari's ear and the side of her head were very red and swollen shortly after Walker had punched her. And the responding police officer, who interviewed Kari later that same day, testified that he observed red marks and discoloration on Kari's ear and on the side of her head that were consistent with blunt force trauma. This evidence was more than sufficient to authorize the jury to find that Walker caused Kari visible bodily injury as charged in the accusation and as required by the statute. Cf. *Simmons v. State*, 285 Ga. App. 129, 129-130 (645 SE2d 622) (2007) (concluding that evidence was sufficient to support conviction of family violence battery by intentionally causing visible bodily harm to

5

the victim where the victim testified that the defendant hit her in the head with his fist, causing her to bleed, and the responding officer observed that the victim was visibly upset and had a cut on her head); *Gilbert v. State*, 278 Ga. App. 765, 766 (629 SE2d 587) (2006) (holding that there was sufficient evidence to sustain defendant's family violence battery conviction under OCGA § 16-5-23.1 where the responding officer testified that the victim's face was red from the defendant's blow, as the victim's reddened face was harm capable of being perceived by a person – the officer – other than the victim); *Babb v. State*, 252 Ga. App. 518, 518, 520 (5) (556 SE2d 562) (2001) (concluding that evidence was sufficient to support jury's verdict of battery, which required a showing of substantial physical harm or visible bodily harm, where the victim's neighbor and friend both testified that the victim's face appeared red and puffy or swollen after defendant struck her in the face).

Although the accusation charged Walker with battery by causing Kari "visible bodily harm," Walker nevertheless argues that the evidence did not support his conviction in that there was no evidence showing that Walker caused Kari to suffer "substantial bruising or substantially swollen body parts" when he punched her. Walker contends that the repeated use of the word "substantially" in the subsection

6

(b) of the statute[1] indicates a legislative intent to exclude minor wounds from the definition of "visible bodily injury." There is no merit to Walker's contention. Indeed, subsection (b) clearly includes nothing more than a non-exhaustive list of examples of visible bodily injuries. And "on its face, the statute encompasses behavior causing harm that is 'capable of being perceived by a person other than the victim.'" *Gilbert,* supra, 278 Ga. App. at 766 (citing OCGA § 16-5-23.1 (b)). As discussed above, such was established in this case. Clearly, the evidence that Walker punched Kari in the ear, knocking her out of bed and causing her harm, i.e., redness and swelling, that was observed by both her father and the responding officer, was sufficient to sustain Walker's conviction for family violence battery under OCGA § 16-5-23.1 (f) (1).

*Judgment affirmed. Mikell, P. J., and Blackwell, J., concur.*

---

[1] As noted previously, OCGA § 16-5-23.1 (b) defines the term "visible bodily harm" as "bodily harm capable of being perceived by a person other than the victim and may include, but is not limited to, substantially blackened eyes, substantially swollen lips or other facial or body parts, or substantial bruises to body parts."