**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 25, 2019**

# In the Court of Appeals of Georgia

A19A1598. STINSON v. THE STATE.

REESE, Judge.

A jury found Vernon Stinson guilty of two counts of statutory rape and two counts of child molestation.[1] Stinson appeals from the denial of his motion for new trial, contending, inter alia, that the trial court "mishandled" his motion for acquittal and discharge, that the court improperly allowed him to represent himself prior to trial, and that he received ineffective assistance of counsel. For the reasons set forth infra, we affirm.

---

[1] See OCGA §§ 16-6-3 (a); 16-6-4 (a). The trial court merged the child molestation convictions into the statutory rape convictions for sentencing purposes.

Viewed in the light most favorable to the jury's verdict,[2] the evidence shows the following facts. In February 2014, the 13-year-old victim lived in Gwinnett County with her father, her brother, the children's nanny and her husband, and Stinson, who was a close friend of the victim's father. According to the victim, she had known Stinson "[s]ince [she] was little[,]" and Stinson "was like an uncle to [her]." In February 2014, however, Stinson started sexually abusing the victim.

The first time it happened, Stinson and the victim were in the living room when he asked her to give him a "lap dance[.]" Although the victim did not know what a "lap dance" was, she sat on his lap and "gyrated" her hips. Stinson pushed the victim back onto the couch, removed her underwear, performed oral sex on her, and then had sexual intercourse with her. Stinson ignored the victim when she told him to stop and that he was hurting her.

The next morning, Stinson went into the victim's bedroom and had oral sex and sexual intercourse with her on her bed. Stinson did the same thing to the victim on her bed the following morning, as well as the next evening. According to the victim, after Stinson had sex with her, he said that he loved her.

_____

[2] See *Carcamo v. State*, 348 Ga. App. 383 (823 SE2d 68) (2019).

The next day, the victim told her father that Stinson had been having sexual intercourse with her and performing oral sex on her during the past week. The victim told her father that Stinson had her go into her father's bedroom and get her father's condoms for him (Stinson) to use during sex, although the victim told her father that Stinson did not use a condom during one of the sexual assaults. When her father confronted Stinson about the victim's allegations, Stinson said that the victim was lying. The victim's father started to physically attack Stinson, but then released him, and Stinson ran to his car and drove away. A couple of days after he left the house, however, Stinson called the victim's father and said that he was sorry.

Law enforcement officers were contacted the day after Stinson left the house, and the victim was taken to a sexual assault center, where a sexual assault examination was conducted. A police officer subsequently interviewed the victim, and a recording of the interview was played for the jury at trial.

During their investigation, police officers seized the victim's bed sheets from her home. On February 28, 2014, an officer obtained an arrest warrant for Stinson. Stinson was placed under arrest about two weeks later and was appointed counsel shortly thereafter. The State charged him with two counts of rape, four counts of aggravated child molestation, two counts of child molestation, and two counts of

statutory rape. On July 1, 2014, while Stinson was incarcerated on the charges, an officer obtained Stinson's DNA through a buccal swab, pursuant to a search warrant. At trial, a forensic biologist employed by the Georgia state crime lab testified that DNA extracted from semen found on the victim's bed sheets matched Stinson's DNA.

Following a four-day trial, the jury found Stinson guilty of two counts of statutory rape and two counts of child molestation.[3] Stinson filed a motion for new trial and three amended new trial motions. The trial court denied the motions for new trial, and this appeal followed.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict[,] and an appellant no longer enjoys the presumption of innocence."[4] Although the appellant generally carries the burden of showing any alleged errors affirmatively by the record, "when [an appellant] challenges an alleged waiver [of his right to counsel] on appeal, it is the State's burden to prove that the [appellant] received sufficient information and guidance from the trial court upon

---

[3] The State dismissed the rape charges on the first day of trial. The State also dismissed two of the aggravated child molestation charges during trial. The jury found Stinson not guilty on the two remaining aggravated child molestation charges.

[4] *Walker v. State*, 329 Ga. App. 369, 370 (765 SE2d 599) (2014) (punctuation and footnote omitted).

which to knowingly and intelligently relinquish [that] right. This evidence must overcome the presumption against waiver."[5] This Court reviews the trial court's ruling as to whether the appellant's waiver of the right to counsel was valid for an abuse of discretion.[6] With these guiding principles in mind, we turn now to Stinson's specific claims of error.

1. Stinson contends that the trial court improperly allowed him to represent himself prior to trial, arguing that he never waived his right to counsel and that he was not qualified to represent himself. According to his appellate brief, Stinson never wanted to represent himself; instead, "he was simply dissatisfied with his lawyer and wanted to game the system." Stinson also argues that the trial court improperly appointed "standby" counsel to assist him while he was acting pro se. Stinson, through his appellate counsel, contends that, "[b]y capitulating to [Stinson's] nonsense and then imposing a standby lawyer on him, the court denied [Stinson] both the right to counsel and the right to self-representation."

---

[5] *Hamilton v. State*, 233 Ga. App. 463, 466-467 (1) (b) (504 SE2d 236) (1998).

[6] *Cox v. State*, 317 Ga. App. 654 (732 SE2d 321) (2012).

(a) It is axiomatic that, under the Sixth Amendment to the United States Constitution, a defendant facing imprisonment has the right to counsel during every critical stage of the criminal prosecution.[7] It is equally true that a criminal defendant

> has an unequivocal right under both the state and federal constitutions to represent himself and waive his right to counsel.[8 However, a defendant's] unequivocal assertion of the right to represent [himself], when made prior to trial, . . . requires that the trial court hold a hearing to ensure that the right to counsel is knowingly and voluntarily waived and that the defendant understands the perils of self-representation.[9]

During such a hearing (referred to herein as a "*Faretta*"[10] hearing), the trial court must question the defendant to the extent necessary to establish on the record that the defendant has made a valid waiver of counsel and an assertion of his right to self-representation.[11]

---

[7] *Platt v. State*, 342 Ga. App. 664, 666 (1) (805 SE2d 112) (2017).

[8] See U. S. Const., Amend. VI; Ga. Const. of 1983, Art. I, Sec. I, Par. XII; *Faretta v. California*, 422 U. S. 806, 835-836 (V) (95 SCt 2525, 45 LE2d 562) (1975).

[9] *Merritt v. State*, 222 Ga. App. 623, 623-624 (475 SE2d 684) (1996).

[10] See *Faretta*, 422 U. S. at 835-836 (V).

[11] See *Cox*, 317 Ga. App. at 654-655.

To be valid, such waiver [of the right to counsel] must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the matter. Each case must be evaluated on its own unique facts and circumstances, and there is no magic language that the trial court must use to determine whether a waiver of counsel is valid. The [S]tate has the burden of proving that the defendant received sufficient information and guidance from the trial court to knowingly and intelligently waive the right to counsel. The record should reflect a finding by the trial court that the defendant has elected to proceed pro se and should show that this choice was made after the defendant was made aware of his right to counsel and the dangers of proceeding without counsel.[12]

In this case, the record shows that, during Stinson's arraignment on July 11, 2014, the court appointed attorney Dale Wren to represent Stinson. Wren filed discovery requests and consolidated motions on Stinson's behalf, and Stinson filed a pro se statutory speedy trial demand on August 21, 2014. Wren did not file a speedy trial demand, and he refused Stinson's request that he adopt the pro se demand. The trial court dismissed the pro se speedy trial demand the next day, ruling that, because

_____

[12] *Davis v. State*, 279 Ga. App. 628, 630-631 (1) (631 SE2d 815) (2006) (punctuation and footnotes omitted); accord *Faretta*, 422 U. S. at 835-836 (V).

7

Stinson was represented by counsel, he could not simultaneously represent himself by filing a pro se speedy trial demand.[13]

During a hearing on September 17, 2014, Stinson informed the trial court that Wren had refused to file a motion "to fight against [Stinson's] rubber-stamped indictment[,]" as well as other motions that Stinson wanted Wren to file, including a plea in abatement. Wren explained to the court that he had discussed the proposed motions with Stinson but did not believe the motions were "warranted [in] this case." The trial court asked Stinson if he wanted Wren to continue representing him, wanted someone else to represent him, or wanted to represent himself, and Stinson responded, "I'll go pro se for now so I can get the motions that I wanted filed. I'll go pro se for this point in time." The trial court allowed Wren to withdraw as counsel, and conducted a *Faretta* hearing, after which it found that Stinson had not waived his right to counsel. Although the trial court appointed attorney Wesley Person to serve as Stinson's new counsel, it ruled that Stinson would be allowed to file, pro se, any

---

[13] See *Wallace v. State*, 288 Ga. App. 480, 481 (654 SE2d 442) (2007) ("The Sixth Amendment right [to counsel] does not afford [a] defendant the hybrid right to simultaneously represent himself and be represented by counsel." Thus, "a pro se demand for a speedy trial filed while a criminal defendant is represented by counsel [is] of no legal effect whatsoever.") (punctuation and footnotes omitted).

motion he wanted to file during the next five days. The court later extended the time period for Stinson to file pro se motions for an additional 30 days.

About a month later, in an October 14, 2014 letter to the trial court, Stinson asked the court to cause Person to "[c]ease and desist" representing him. And, in an October 28, 2014 letter to the court, Stinson claimed that Person's representation was "ineffective" because Person had refused to file certain motions that, inter alia, challenged the indictment and asserted constitutional violations.

Then, during a November 19, 2014 motion hearing, Stinson again informed the court that he (Stinson) "need[ed] to go pro se." As a result, the court conducted another *Faretta* hearing, during which Stinson, a high school graduate with some college education, demonstrated that he knew the elements and the maximum penalties of the offenses for which he had been charged, some of the lesser included offenses for those charges, and potential defenses that were available. The trial court advised Stinson of the potential consequences of proceeding pro se, including the constitutional rights he would be giving up, and the court informed Stinson that he (Stinson) would be responsible for preparing and making strategic decisions for trial and preserving a trial record. After being so notified, Stinson told the court that he still wanted to represent himself. Stinson told the court, however, that he "wouldn't

9

mind having [ ] Person as my co-counsel[,]" if that was possible. The court responded

that Person could not serve as Stinson's co-counsel, but it would consider appointing

Person as his standby counsel.

At the end of the *Faretta* hearing, the court found that Stinson had freely,

voluntarily, and knowingly waived the right to counsel and elected to represent

himself. Thus, the trial court granted Stinson's request to represent himself, but the

court appointed Person as standby counsel to assist Stinson. Stinson was also notified

that, if he changed his mind about representing himself, he would be able to request

that an attorney be appointed to take over his case.

Under these circumstances, we hold that the record supports the trial court's

finding that Stinson knowingly and voluntarily waived his right to counsel, and that

the trial court did not abuse its discretion in allowing Stinson to proceed pro se prior

to trial.[14]

---

[14] See *Wilkerson v. State*, 286 Ga. 201, 203 (2) (a) (686 SE2d 648) (2009) (holding that the record reflected that the trial court, through its colloquy, properly determined that the defendant had made a knowing and intelligent waiver of his right to counsel).

(b) As for Stinson's contention that the trial court violated his right to self-representation by appointing Person to serve as his standby counsel, this Court has held that

> a trial court may appoint standby counsel for an accused wishing to represent himself at trial, even over the defendant's objection, provided that standby counsel's role is appropriately limited. Appropriate limitation is that which ensures that standby counsel is not excessively intrusive and preserves for the pro se defendant a fair chance to present his case in his own way.[15]

Here, the record shows that Stinson represented himself from November 2014 until April 2016, and that, although Stinson was incarcerated during that period,[16] he filed numerous pro se motions[17] and was present at every motion hearing, calendar call, and status hearing. Person continued to assist Stinson, at Stinson's request, throughout that period by, inter alia, filing additional motions, arguing certain motions, hiring an investigator to assist them with Stinson's defense, searching for

---

[15] *Merritt*, 222 Ga. App. at 624 (citation and punctuation omitted).

[16] In October 2015, the trial court granted Stinson's request for a reduction in bond, reducing the bond to $20,000. The court further reduced Stinson's bond to $17,500 the next month. Stinson, however, was unable to pay the bond and, thus, remained incarcerated from his arrest in March 2014 until his May 2016 trial.

[17] See Division 3 (c), infra.

11

an expert witness that Stinson believed was necessary for his defense, subpoenaing witnesses and records, and reviewing confidential records from the Department of Family and Children Services ("DFCS"). Stinson never objected to Person's appointment as standby counsel, never complained about any actions taken by Person on Stinson's behalf, and never asserted that his right to self-representation was being violated due to Person's appointment.[18]

Thus, Stinson waived any objection to the appointment of Person as standby counsel. "No matter how erroneous a ruling of a trial court might be, a litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal. He must stand his ground. Acquiescence deprives him of the right to complain further."[19] "A party's duty to object . . . gives the trial court the opportunity to correct the alleged error, and avoids the possibility that a party may intentionally fail to object to a ruling and take a chance of a favorable outcome at trial based on the knowledge he or she stands a chance of obtaining a reversal on appeal."[20]

---

[18] See *Merritt*, 222 Ga. App. at 624.

[19] *Smith v. State*, 259 Ga. App. 736, 739 (3) (578 SE2d 295) (2003) (citation and punctuation omitted).

[20] *Wilkerson*, 286 Ga. at 205-206 (2) (b) (punctuation omitted).

Further, there is no evidence that Person's service as standby counsel prevented Stinson from planning and conducting his defense in the manner he believed was appropriate and necessary.[21] The record shows that Stinson asked or allowed Person to perform certain tasks that he (Stinson) was unable to do due to his incarceration,[22] and, with one exception,[23] Stinson was present every time Person filed a motion or addressed the court on his (Stinson's) behalf, but he never asserted that Person had performed any action that was inconsistent with or undermined his defense.[24] Thus,

[21] See *Merritt*, 222 Ga. App. at 624; see also *Thomas v. State*, 331 Ga. App. 641, 658 (7) (771 SE2d 255) (2015) ("Once given pro se status, the defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial.") (citation and punctuation omitted).

[22] See *Merritt*, 222 Ga. App. at 624.

[23] See Division 4 (c), infra.

[24] We note that, during the hearing on Stinson's motion for new trial, his appellate counsel asked the trial court to take judicial notice of a standing order by the Gwinnett Judicial Circuit that set guidelines for the appointment and use of standby counsel for indigent defendants. The guidelines were issued in March 2016, shortly before Stinson's May 2016 trial, but Stinson did not bring them to the court's attention while he was acting pro se. Section III (3.9) of the guidelines contain two provisions regarding the "Obligations of Hybrid and Standby Counsel":
> A. Defense counsel whose duty is to actively assist a pro se defendant should permit the defendant to make the final decisions on all matters, including strategic and tactical matters relating to the conduct of the

13

Stinson has failed to demonstrate any prejudice that resulted from Person's appointment or service as standby counsel prior to trial.[25]

Consequently, this argument presents no reversible error.

2. In a related matter, Stinson contends that, after he changed his mind about representing himself and asked the court to allow Person to represent him from that point forward, the trial court violated his right to self-representation by granting that request without first conducting a "reverse *Faretta*" hearing. Stinson also argues that the court erred in failing to issue written findings showing that he had knowingly and voluntarily waived the rights intrinsic to a defendant's self-representation *during trial*, such as participating in voir dire, questioning witnesses, and arguing to the jury.

case.

B. Defense counsel whose duty is to assist a pro se defendant only when the defendant requests assistance may bring to the attention of the defendant matters beneficial to him or her, but should not actively participate in the conduct of the defense unless requested by the defendant or insofar as directed to do so by the court.

Although Stinson suggests on appeal that the trial court failed to limit Person's involvement as standby counsel prior to trial to ensure that Person complied with these provisions, he has failed to present any evidence that Person violated either provision or that he (Stinson) was prejudiced thereby.

[25] See generally *Dailey v. State*, 313 Ga. App. 809, 816 (1) (723 SE2d 43) (2012) ("[T]o be successful, a claim of error requires a showing of both harm and error.").

14

These arguments, however, are unsupported by applicable or binding precedent and are completely lacking in merit.

In this case, the record shows that, at the end of a motion hearing on April 8, 2016, about one month *before* the May 2016 trial, Stinson spontaneously told the trial court, "What I want to do right now is let Mr. Person take over my case from now [on]." The court granted the request and informed Person that he was going to be "taking over[ ]" the case, and Person represented Stinson thereafter, through the May 2016 trial and until appellate counsel was appointed in June 2016 to pursue Stinson's motion for new trial. Stinson never objected to Person's appointment as his counsel, nor did Stinson ever revoke his request for counsel or assert his right to self-representation again in the trial court.

> After a defendant properly waives his Sixth Amendment right to counsel, that right is no longer absolute. The right to counsel, however, does not evaporate following a valid waiver, and a defendant may make a post-waiver request for counsel if, for example, he discovers he is overwhelmed by the trial process. Whether to grant or deny a defendant's post-waiver request for counsel is within the broad discretion of the trial court. In considering a post-waiver request for counsel, a trial court may consider, among other things, the timing of the request. As the trial date draws nearer, the trial court can and should consider the practical concerns of managing its docket and the impact

15

that a request may have on its general responsibilities for the prudent administration of justice. The possibility of a disruption of trial proceedings may be diminished, however, if a defendant has had standby counsel and requests that the standby counsel represent him.[26]

Contrary to Stinson's argument that the trial court should have conducted a "reverse *Faretta*" inquiry when Stinson asked that Person be allowed to represent him,[27] the Supreme Court of Georgia has held that the determination of whether a defendant should be allowed to reverse his decision to represent himself (and thus require the court to appoint counsel to represent the defendant) "is not part of the required *Faretta* colloquy, which simply requires the court to warn a defendant of the dangers that can arise from self-representation."[28] To the extent Stinson argues that the court failed to notify him at that time that he would not be able to question

---

[26] *Wilkerson*, 286 Ga. at 204 (2) (b) (citations and punctuation omitted).

[27] To the extent Stinson relies on a California case, *People v. Bradley*, No. C064726, 2012 Cal. App. Unpub. LEXIS 7343 (Ca. Ct. App., 3rd Dist. Oct. 9, 2012), for his claim that "other jurisdictions" had "embraced" the idea of conducting "reverse *Faretta*" hearings, *Bradley* specifically stated that it was not to be published or cited as precedent. Even so, we note that, contrary to Stinson's claim, the appellate court in *Bradley* expressly rejected the defendant's argument that he was entitled to a "reverse *Faretta*" hearing, finding the argument to be without merit. *Bradley*, 2012 Cal. App. Unpub. LEXIS 7343, at *20 (II), 31-32 (II) (3).

[28] *Wilkerson*, 286 Ga. at 205 (2) (b).

witnesses or otherwise represent himself at trial, Stinson never asserted that he had a right to do so before or during trial, nor did he ever claim that he was unaware that he would be precluded from doing so if Person represented him.

Moreover, Stinson has cited to no authority that requires the trial court to issue written findings to support its ruling that the defendant knowingly and voluntarily waived his right to self-representation, and we note that even *Faretta* does not require a court to make such written findings.[29] Instead, *Faretta* only requires that the record show that the defendant had knowingly and intelligently chosen to represent himself, i.e., that "he [knew] what he [was] doing and his choice [was] made with [his] eyes open."[30]

Given these circumstances, we find no abuse of discretion in the court's grant of Stinson's request that Person represent him at trial.

3. Stinson contends that the trial court "mishandled" his pro se motion for discharge and acquittal. He argues that the trial court erred in denying him an evidentiary hearing on the motion and in denying him counsel by allowing him to argue the motion even though Person was representing him. According to Stinson, if

---

[29] See *Faretta*, 422 U. S. at 835-836 (V).

[30] Id. at 835 (V) (citation and punctuation omitted).

17

Person had argued the motion, Person "would have won it." These arguments misrepresent the facts and are without merit.

(a) The record shows that, on April 8, 2016, *while Stinson was still representing himself*,[31] Stinson filed a motion for discharge and acquittal in open court. The motion asserted that Stinson had been denied counsel prior to his arraignment and that, after Wren was appointed to represent him at the July 2014 arraignment, Wren failed (or refused) to "fight for [Stinson's] constitutional rights" and file a speedy trial demand. According to the motion, Stinson's constitutional and statutory rights to a speedy trial had been violated,[32] so the court should issue an order

---

[31] See Division 2, supra.

[32] Although Stinson filed, pro se, a document entitled "Constitutional Speedy Trail" (sic) in May 2015, the only statutory speedy trial demand filed in this case was filed by Stinson, pro se, in August 2014, while he was represented by counsel. The trial court dismissed the statutory speedy trial demand, and that dismissal is not at issue on appeal.

Further, to the extent Stinson argues that the constitutional speedy trial demand that he filed in May 2015 also constituted a statutory speedy trial demand under OCGA § 17-7-171 (a), the argument lacks merit, because the document failed to comply with the requirements for a statutory demand and was untimely filed. See OCGA § 17-7-171 (a) ("Any person accused of a capital offense *may enter a demand for speedy trial at the term of court at which the indictment is found or at the next succeeding regular term thereafter*; or, by special permission of the court, the defendant may at any subsequent term thereafter demand a speedy trial. . . . A demand for trial filed pursuant to this Code section *shall be filed as a separate, distinct, and individual document* and shall not be a part of any other pleading or document. *Such*

18

discharging and acquitting him of the offenses charged in the indictment; the motion did not ask the court to conduct an evidentiary hearing. The court allowed Stinson to present argument on the motion, but, instead of addressing the issues raised in the motion, Stinson argued that he had announced "ready" for trial in April or May 2015, but his trial had been delayed due to the need for an in camera inspection of DFCS records he had subpoenaed, as well as his need to review the records once the court had conducted its in camera review. Stinson also argued that, even though he had again announced "ready" for trial in February 2016, the trial was postponed so he could subpoena out-of-state DFCS records and DFCS witnesses. After hearing Stinson's argument, the court stated that it was going to take the matter under advisement, specifically explaining that it needed to review all of the transcripts of the prior hearings in order to properly apply the four prongs of the *Barker-Wingo*[33] balancing test.

---

*demand shall clearly be titled 'Demand for Speedy Trial'*; reference this Code section within the pleading; and identify the indictment number or accusation number for which such demand is being made.") (emphasis supplied).

[33] See *Barker v. Wingo*, 407 U. S. 514, 530-533 (IV) (92 SCt 2182, 33 LE2d 101) (1972).

Thus, contrary to Stinson's assertions on appeal, the motion for discharge and acquittal and the April 8, 2016 hearing transcript clearly show that, at the time Stinson argued the motion, Stinson was still representing himself, as he had not yet asked the court to appoint Person as his counsel. In addition, Stinson never requested an evidentiary hearing on the motion, and, while the court allowed Stinson to present argument on his pro se motion, Stinson never objected, indicated that he was unable or unprepared to argue the motion himself, or asked the court to allow Person to argue the motion on his (Stinson's) behalf. More importantly, Person was present to assist Stinson, if Stinson chose to consult with him, and the trial court never prohibited Person from arguing the motion if Stinson had decided to delegate that responsibility.

Thus, Stinson's arguments regarding the trial court's alleged mishandling of his motion for discharge and acquittal are without merit.

(b) Stinson also appears to assert that the trial court improperly allowed him to represent himself during a *subsequent* hearing on May 6, 2016, three days before the trial was set to begin, at which time he was represented by Person. This argument also lacks merit.

The record shows that, on May 5, 2016, about a month after Stinson filed and argued his pro se motion for discharge and acquittal, the court issued an order

denying the motion. In its order, the court ruled, inter alia, that the trial delays were largely attributable to Stinson, that Stinson had failed to timely assert his right to a speedy trial, and that Stinson had failed to demonstrate that he was prejudiced by the delay. Under these circumstances, the court found that no constitutional error had resulted from the delay in bringing the case to trial.[34]

During a status hearing conducted the next day, Stinson filed a pro se, handwritten, and unsigned objection ("Objection") to the trial court's ruling, even though Person was representing Stinson at that time. According to the Objection, the court erred in finding that he (Stinson) was at fault for many of the trial delays, because he was acting pro se while incarcerated and, as a result, was unable to perform many of the tasks necessary to prepare for trial, such as reviewing records, questioning witnesses, and finding expert witnesses, in a more timely manner. The Objection also asserted that Stinson had received ineffective assistance of counsel, complaining that his first appointed counsel had not filed necessary motions or otherwise adequately represented him.

---

[34] See Division 3 (c), infra.

After reading the Objection, the trial court told Stinson that the Objection did not change the court's ruling on the motion for discharge and acquittal.[35] Although Stinson repeatedly attempted to argue the merits of the Objection, the court emphasized to him that it had read the document, that it did not need Stinson to read the document aloud in court, and that further argument would not change its ruling. As a result, Stinson requested, pro se, a certificate of immediate review, which the trial court denied, ruling that the request was frivolous and asserted solely for the purpose of delaying the trial.[36]

Then, because it had been Stinson, instead of Person, who had filed and attempted to present argument on the Objection and had asked for a certificate of immediate review, the prosecutor asked Stinson if he had fired Person as his attorney. Stinson responded that Person had "told [him that Person] could not represent [him] on [the motion for] acquittal and discharge. So I didn't fire [ ] Person." The trial court judge interjected, stating that "Stinson [had] filed [a pro se] constitutional demand

---

[35] We note that the trial court subsequently issued an amended order denying the motion for discharge and acquittal, adding a single paragraph in which it expressly ruled that there had been no constitutional error.

[36] In response, Stinson told the court that "[d]ue process is guaranteed to [him] under the Constitution. So if [review of the ruling] takes a year, two and a half years, whatever it takes[,]" he still wanted a certificate of review.

22

[for speedy trial] before [Person took over as counsel]. It was the last official act [Stinson] did on his own. I think it's fair to allow [ ] Stinson to have all the follow-up in that regard[.]" Neither Stinson nor Person objected to the judge's statement, nor did they assert that Person should have argued the Objection, instead of Stinson.[37]

Thus, to the extent the trial court allowed *any* argument on Stinson's pro se Objection to its denial of the motion for discharge and acquittal during the May 6, 2016 hearing, the transcript shows that the trial court did not prevent Person from arguing on Stinson's behalf; instead, it was Stinson who informed the court that Person could not argue the Objection. Under these circumstances, Stinson has failed to demonstrate any reversible error.

(c) In the same enumerated error, Stinson attempts to argue the merits of the trial court's denial of his motion for discharge and acquittal. Specifically, Stinson argues that the trial court erred in assigning primary responsibility for the trial delay to him based upon his filing of numerous motions throughout the two years prior to trial. Pretermitting whether Stinson waived this argument by failing to properly

---

[37] See *Smith*, 259 Ga. App. at 739 (3) (A party's acquiescence to the court's ruling waives the right to complain of it on appeal.).

enumerate it as error in his appellate brief,[38] we find that the trial court's ruling was authorized by the record.

> In deciding a constitutional speedy trial claim, [trial] courts must engage in a balancing test by considering (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) prejudice to the defendant.[[39]] The existence of no one factor is either necessary or sufficient to sustain a speedy trial claim, and a trial court's findings of fact and its weighing of disputed facts will be afforded deference on appeal. Accordingly, with the *Barker* factors in mind, we review the trial court's ruling for abuse of discretion.[40]

In its order denying the motion for discharge and acquittal, the trial court ruled that the trial delays were largely attributable to Stinson, who had

---

[38] See *Cobble v. State*, 268 Ga. App. 792, 794 (2) (603 SE2d 86) (2004) ("[A]rguments raised in the appellate brief are not made issues on appeal unless they are properly enumerated as error.") (punctuation and footnote omitted).

[39] *Barker*, 407 U. S. at 530-533 (IV); see also *Doggett v. United States*, 505 U. S. 647, 651 (II) (112 SCt 2686, 120 LE2d 520) (1992) (The four separate inquiries are "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result[.]").

[40] *Harris v. State*, 314 Ga. App. 565 (724 SE2d 864) (2012) (punctuation and footnotes omitted).

filed more than forty motions over the course [of] this case. Rather than file all [of] these motions at one time so that this [c]ourt could address the motions in bulk, [Stinson] continued to file the motions a few at [a] time so that this [c]ourt had to have a motion hearing nearly every month or every other month to address his motions.

The court's order provides a detailed timeline documenting the numerous motions filed by Stinson, pro se, or by Person on Stinson's behalf. In addition, the appellate record contains the transcripts of 23 pre-trial motion hearings, status hearings, and calendar calls. Although Stinson's appellate brief states that his pre-trial filings only "resulted in six motions hearings over two years," that statement misrepresents the record and transcripts, which show that Stinson filed multiple motions, document requests, etc., during numerous court appearances.[41] In fact, in October and November

---

[41] For example, the record shows that Stinson's trial was originally scheduled for August 2015, and, at various times throughout the eight months preceding that date, Stinson's filings included a motion asserting an alibi; motions requesting money for an expert witness and for an investigator; a motion asking for a confidential psychological examination of the victim; a motion to pierce Georgia's Rape Shield Statute, OCGA § 24-4-412; a motion seeking an evidentiary hearing regarding the admissibility of child hearsay; a motion to dismiss in the interest of justice; a motion for permission to file an out-of-time speedy trial demand; and motions seeking, inter alia, allegedly exculpatory evidence, the criminal histories of the State's witnesses, the victim's medical and psychological history, and the results of any scientific tests conducted, as well as a "notice for rescinding[,]" based upon Stinson's claim that he was a sovereign citizen who was immune from prosecution, a "notice of dishonor[,]" and a motion seeking relief under the Hague Convention.

2015, the court advised Stinson that the case had been ready to try for over six months, but every time he filed new motions, his trial date was further delayed.[42]

The trial court's order also states that Stinson had filed his first valid demand for speedy trial over a year after his March 2014 arrest, a fact that "weigh[ed] heavily against [Stinson]" on his motion for discharge and acquittal. Further, the court ruled that Stinson had "not presented any evidence that his defense ha[d] been impaired due to the delay. Instead, the delay . . . was to address his motions, and to arguably help his case." Under these circumstances, the court found that no constitutional error resulted from the delay in bringing the case to trial.

---

Then, from August 2015, when the trial was continued due to Stinson's inability to locate a critical witness, through the May 2016 trial, Stinson continued to file new motions, including motions to suppress, a motion to dismiss the indictment based on selective prosecution, a request for additional DFCS records, and a request for additional money to hire another expert witness.

And, while many of Stinson's motions had some merit, others sought information that Stinson had already been provided or to which he was not entitled, while other motions were simply "nonsense" or were frivolous, as Stinson's appellate counsel conceded in Stinson's brief.

[42] See generally *Ruffin v. State*, 284 Ga. 52, 59 (2) (b) (ii) (663 SE2d 189) (2008) (When a defendant delays his trial by, for example, filing a series of frivolous pretrial motions, "it will be nearly impossible for the defendant to make out a violation" of his constitutional right to a speedy trial.).

Based upon our review of the appellate record, we find that it supports the trial court's findings of fact, and we hold that the trial court's ruling did not constitute an abuse of discretion.[43]

4. Stinson argues that the trial court erred in failing to grant him a new trial based on several claims of ineffective assistance of counsel.

> In order to establish ineffectiveness of trial counsel, [the] appellant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance. The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case. In reviewing a lower court's determination of a claim of ineffective assistance of counsel, [the appellate court gives] deference to the trial court's factual findings, which are upheld on appeal unless clearly erroneous; however, [the appellate court reviews] the lower court's legal conclusions de novo.[44]

---

[43] See *Sosniak v. State*, 292 Ga. 35, 41 (3) (734 SE2d 362) (2012) ("A trial court's ruling on a motion to dismiss on [constitutional] speedy trial grounds is reviewed for abuse of discretion. Also, a trial court's findings of fact and its weighing of disputed facts will be afforded deference on appeal.") (citations and punctuation omitted).

[44] *Williams v. State*, 277 Ga. 853, 857 (6) (596 SE2d 597) (2004) (citation and punctuation omitted).

Still, we will not reverse a conviction on the basis of ineffective assistance of counsel "unless trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial could not reliably have produced a just result. Absent clear error and harm, we will affirm the trial court's finding that [the defendant] did not receive ineffective assistance of counsel."[45] And, "[s]ince an appellant claiming ineffective assistance of counsel must show both deficient performance and actual prejudice stemming from that deficiency, an insufficient showing on either of these prongs relieves the reviewing court of the need to address the other prong."[46]

(a) Stinson contends that Person provided ineffective assistance because he failed to "revive[ ]" Stinson's pro se motion to suppress the DNA evidence obtained through buccal swabs of his (Stinson's) mouth, arguing that Person should have filed an amended motion to suppress when Person took over the case as Stinson's attorney in April 2016, one month before trial. "To establish ineffective assistance of counsel on the basis of counsel's failure to file a timely motion to suppress, [the appellant]

---

[45] *Glass v. State*, 255 Ga. App. 390, 401 (10) (565 SE2d 500) (2002).

[46] *Williams*, 277 Ga. at 858 (6) (a) (citation and punctuation omitted).

28

must make a strong showing that had the motion been considered, the damaging evidence would have been suppressed."[47]

The record shows that, on October 21, 2015, while Stinson was representing himself,[48] he filed a pro se motion to suppress all "statements, confessions[,] and DNA acquired by the [police] before [the] arrest warrant was perfected as [a] violation of [the] Poisonous Tree Doctrine[.]" The motion argued that "DNA and statements are in reality a form of confession[,]" and that "DNA confessions that are the product of coercion . . . are inadmissible." Despite the references to "DNA" evidence, the motion did not state whether Stinson was referring to evidence obtained from the victim's bed sheets, the buccal swabs of his mouth, or some other source.[49] After looking at the motion, the court told Stinson that he "may have some problems

---

[47] *Williams v. State*, 316 Ga. App. 383, 384 (729 SE2d 517) (2012) (citation and punctuation omitted).

[48] The record also shows that Stinson's first appointed counsel, Wren, filed a non-specific motion to suppress as part of an omnibus motions package on July 16, 2014. There is no ruling on the motion in the record.

[49] In contrast, Stinson's pro se motion to suppress DNA evidence obtained from the victim's bed sheets, filed the same day, specifically identified the sheets, the address from which they were seized, the officer who provided the affidavit upon which the search warrant was based, etc. That motion to suppress is not at issue in this appeal.

with [it. On] a motion to suppress, you have to articulate [what you want suppressed and why]. It has to be specific. It cannot be general. What I'm seeing on this, it appears to be general." Neither Stinson nor Person filed an amended motion to suppress.

(i) Stinson argues that Person was ineffective for failing to move to suppress the DNA evidence from the buccal swab on the basis that the State violated his rights under the Georgia Constitution[50] by compelling him (Stinson) to provide self-incriminating DNA evidence, i.e., forcing him to commit the affirmative act of opening his mouth. In so arguing, Stinson relies on the Supreme Court of Georgia's decision in *Olevik v. State*,[51] even though Stinson fails to mention in his brief that the Court issued the *Olevik* decision on October 16, 2017, 17 months after Stinson's May 2016 trial.[52]

---

[50] See Ga. Const. of 1983, Art. 1, Sec. 1, Par. XVI ("No person shall be compelled to give testimony tending in any manner to be self-incriminating.").

[51] 302 Ga. 228 (806 SE2d 505) (2017).

[52] Notably, during the motion for new trial hearing, appellate counsel actually asked Person, "You didn't know about *Olevik* at the time [Person was representing Stinson] because [*Olevik*] hadn't been [ ] reached[.] But had you known about this argument, you would have tried to get the DNA evidence excluded, would you not?" However, "hindsight has no place in an assessment of the performance of trial counsel, and a lawyer second-guessing his [or her] own performance with the benefit

30

Regardless, *Olevik* clearly does not support Stinson's argument. In *Olevik*, the

Supreme Court specifically held:

> [T]he right against compelled self-incrimination is not violated where
> a defendant is compelled only to be present so that certain incriminating
> evidence may be procured from him. Consequently, we have ruled that
> the right is not violated by removing clothing from a defendant.
> Similarly, the right is not violated when evidence is taken from a
> defendant's body or photographs of the defendant are taken.[53]

As examples of the latter situation, the Supreme Court cited to, among other cases,

*Quarterman v. State*,[54] which held that a statute requiring a convicted felon to provide

a DNA sample did not violate his right against compelled self-incrimination because

it did not force the convicted felon to remove incriminating DNA evidence from his

body himself, but only to submit to having the evidence removed, and *State v.*

---

of hindsight has no significance for an ineffective assistance of counsel claim."
*Simpson v. State*, 298 Ga. 314, 318 (4) (781 SE2d 762) (2016) (citation and
punctuation omitted).

[53] *Olevik*, 302 Ga. App. at 242 (2) (c) (iii). *Olevik* is also distinguishable from
the instant case because it involved a state-administered breath test that was
conducted without a warrant, whereas the State had a warrant authorizing the buccal
swab for DNA in this case. See id. at 234 (2) (b).

[54] 282 Ga. 383, 386 (4) (651 SE2d 32) (2007).

31

*Thornton*,[55] which held that taking an impression of the defendant's teeth (which requires that a defendant's mouth be open and is arguably more invasive than simply swabbing a person's cheek for DNA) did not compel the defendant to perform an affirmative act.[56]

Based on this precedent, as well as Stinson's failure to cite to any supporting authority, we conclude that Stinson cannot make a strong showing that, if Person had filed a motion to suppress raising the self-incrimination argument Stinson asserts on appeal, the trial court would have granted the motion.[57] Thus, he cannot prevail on this ineffective assistance claim.

(ii) In his appellate brief, Stinson also claims that Person was ineffective for failing to move to suppress the DNA evidence from the buccal swab on the basis that the search warrant for the buccal swab only authorized officers to obtain the evidence at the "Gwinnett County Jail" at "2900 University Parkway, Lawrenceville, GA, 30043[,]" but the buccal swab was actually conducted while Stinson was in a courtroom holding cell located at "75 Langley Drive[.]" As Stinson's appellate

---

[55] 253 Ga. 524, 525 (2) (322 SE2d 711) (1984).

[56] *Olevik*, 302 Ga. App. at 242 (2) (c) (iii).

[57] See *Williams*, 316 Ga. App. at 384.

counsel specifically conceded during the motion for new trial hearing, however, the buccal swab DNA evidence was obtained at the jail, as authorized by the warrant, and there is no evidence in the record that shows otherwise. As the trial court ruled in its order denying Stinson's motion for new trial, "[a]s there [was] no evidence that the geographical location listed in the search warrant [was] incorrect, this [c]ourt cannot find the motion to suppress on these grounds would have been successful." Thus, Stinson cannot prevail on this ineffective assistance claim.[58]

(b) Stinson contends that he received ineffective assistance when Person failed to argue his (Stinson's) pro se motion for discharge and acquittal, even though Person was representing Stinson at the time. This argument lacks merit for the reasons given in Division 3, supra.

(c) Stinson claims that Person provided ineffective assistance by arguing a "critical phase" of the trial while Stinson was acting pro se and was not present in the courtroom. Stinson also complains that, during this "critical phase" of the trial,

---

[58] See *Williams*, 316 Ga. App. at 384; see also *Burke v. State*, 316 Ga. App. 386, 389 (1) (a) (729 SE2d 531) (2012) ("Failure to make a meritless or futile objection or motion cannot be evidence of ineffective assistance.") (punctuation and footnote omitted).

Person obtained a continuance that may have pushed the case into the next term, thereby defeating his May 2015 speedy trial demand.

The record shows that, on July 15, 2015, after Person had reviewed DFCS records concerning the victim, he informed the court that the defense was going to serve subpoenas on DFCS employees to testify during Stinson's trial, which had been set for August 10, 2015. Then, at the beginning of a status hearing on August 10, 2015, while Stinson was still in a holding cell and, thus, absent from the courtroom, Person requested a continuance in order to give the defense more time to locate and subpoena a DFCS case manager. The case manager had worked with the victim after the victim falsely alleged that her father had sexually abused her, and Person considered the case manager to be the most important of the DFCS witnesses and essential to the defense's attempt to attack the victim's credibility. The court granted the continuance and, as soon as Stinson entered the courtroom, the court informed him of the request and its ruling. Stinson did not object to Person's actions or the court's ruling or otherwise insist on going to trial without the witness.

Significantly, as a result of the continuance initially obtained by Person, the case manager was located, and she testified on behalf of the defense during the May 2016 trial. The witness testified that she had been a DFCS case manager who had

worked with the victim after she (the victim) alleged that her father had physically, sexually, and emotionally abused her, including her claim that he had raped her. The victim subsequently recanted all of the allegations during a juvenile court hearing, telling the judge that she was tired of lying and wanted to go home. The DFCS case manager also testified that the victim had been diagnosed with bipolar disorder and had been taking medication for the disorder while in DFCS's care.

Thus, the record shows that, not only did Stinson acquiesce in Person's August 10, 2015 request for a continuance, he essentially ratified the request during the hearing by failing to object when advised of the request and the court's ruling.[59] In addition, given the witness's testimony about the victim, Stinson has failed to show that he was prejudiced by Person's actions.[60]

Moreover, the record shows that, during a status hearing a few days later, on August 19, 2015, a DFCS representative appeared and challenged subpoenas that had been issued by the defense. The trial court asked Stinson if he wanted the court to delay the trial until the subpoena challenge could be resolved, and Stinson responded, "Yes, sir." Thus, even if Person improperly requested a continuance in Stinson's brief

---

[59] See *Wilkerson*, 286 Ga. at 205-206 (2) (b); *Smith*, 259 Ga. App. at 739 (3).

[60] See *Williams*, 277 Ga. at 857 (6).

35

absence on August 10, Stinson rendered any error harmless when he requested and obtained a further continuance nine days later.[61]

Finally, although Stinson contends that Person was ineffective for failing to advise him that the August 2015 requests for continuances might impact the constitutional speedy trial demand he had filed in May 2015, this contention ignores the fact that Stinson was representing himself at that time.

> As the Supreme Court of Georgia has long held, . . . when a criminal defendant elects to represent himself, either solely or in conjunction with representation or assistance by an attorney, he will not thereafter be heard to assert a claim of ineffective assistance of counsel with respect to any stage of the proceedings wherein he was counsel.[62]

Consequently, Stinson cannot prevail on this ineffective assistance claim.

*Judgment affirmed. Miller, P. J., and Rickman, J., concur.*

---

[61] See *Williams*, 277 Ga. at 857 (6); see also *Dailey*, 313 Ga. App. at 816 (1) (both harm and error must be shown to obtain reversal of a conviction).

[62] *Renfro v. State*, 348 Ga. App. 615, 618 (3) (824 SE2d 75) (2019) (citation and punctuation omitted).